**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Greenbelt Division)**

| | | |
|---|---|---|
| LORD & TAYLOR, LLC, | * | |
| 424 Fifth Avenue | * | |
| New York, New York  10018 | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | Case No. _____ |
| | * | |
| WHITE FLINT, L.P. n/k/a | * | |
| WHITE FLINT MALL, LLP, | * | |
| 2000 Tower Oaks Boulevard | * | |
| Eighth Floor | * | |
| Rockville, Maryland 20852 | * | |
| Defendant. | * | |
| SERVE: | * | |
| ARTHUR N. FUCCILLO | * | |
| 2000 Towers Oaks Boulevard | * | |
| Eighth Floor | * | |
| Rockville, Maryland  20852 | * | |
| | ****** | |

## VERIFIED COMPLAINT

Lord & Taylor, LLC ("Lord & Taylor" or "Plaintiff") files this Complaint against White

Flint, L.P., n/k/a/ White Flint Mall, LLLP ("White Flint" or "Landlord") and respectfully states

as follows:

### Parties

1. Lord & Taylor is a limited liability company whose member is located in

Delaware.

2. Landlord is a limited liability limited partnership. The partners of White Flint are

Lerner Enterprises, LLC, Gary Abramson, Ronald Abramson, and Lawrence Lerner.  Messrs.

Abramson and Lerner are residents of the State of Maryland.  Lerner Enterprises, LLC is a

limited liability corporation whose members are located in Maryland, the District of Columbia and California.

### Jurisdiction

3.      Jurisdiction is proper pursuant to 28 U.S.C. § 1332 as the parties are diverse and the dispute in controversy involves claims which exceed $75,000.

### Venue

4.      Venue is proper under 28 U.S.C. § 1391(b) as the events giving rise to the dispute occurred in Montgomery County, Maryland.

### Facts

5.      On September 2, 1975, White Flint, Lord & Taylor[1] and Federated Department Stores, Inc. ("Federated") entered into a Construction Operation and Reciprocal Easement Agreement ("Agreement") pertaining to the development and construction of White Flint Shopping Center ("Shopping Center").  A true and correct copy of this Agreement, as amended, is attached hereto as **Exhibit A**.

6.      The Agreement contemplated the construction of an Enclosed Shopping Mall in Montgomery County, Maryland where both Lord & Taylor and Bloomingdale's[2] would serve as anchor tenants.

7.      In order to induce Lord & Taylor to sign a long term lease at the Shopping Center, White Flint, as landlord and developer, agreed to abide by the following restrictive covenants while the Agreement was in effect:

      a.      Landlord cannot, without the prior consent of Lord & Taylor, alter, modify or change the architectural design or the appearance, or change the number of floors, size

---

[1] Through its predecessor in interest, Adcor Realty Corporation
[2] Then owned by Federated

or location of the buildings within the shopping center tract, or change the size, location or arrangement of the Enclosed Mall,[3] the parking areas and other Common Areas;

    b.      Landlord cannot change or modify the Enclosed Mall;

    c.      Landlord cannot exceed 500,000 sq. ft. of Floor Area on the Shopping Center Site of which no more than 100,000 sq. ft. of office space shall be developed;

    d.      Landlord cannot make any changes to the Shopping Center Site that would unreasonably restrict pedestrian and vehicular traffic; and

    e.      Landlord must continually manage and operate the Shopping Center Site in accordance with present standards of good regional shopping center operation as:

    (i) a complex of retail stores, offices (if any) and restaurants which is part of an Enclosed Mall development with related Common Area facilities; and

    (ii) a first class high fashion regional shopping center used and occupied only for business of selling goods, wares, merchandise and for offices and restaurants with parking incidental thereto and for no other purpose.

**See Exhibit A**.

8.      Upon the execution of the Agreement, Lord & Taylor began the construction of its store ("Store"), and began serving customers in the local and metropolitan community surrounding the Store in 1976.  That service has continued for more than thirty-five years.

9.      With the construction of the Shopping Center Site, several parking lots were also constructed around the Store which had the effect of generating a significant amount of pedestrian foot traffic into the Store.

10.      In addition, a primary interior circular road surrounding the Shopping Center Site was constructed and has allowed vehicular traffic to flow easily to and around the Store.

---

[3] Capitalized terms shall have the meanings set forth in the Agreement.

11.     Lord & Taylor's customer base also grew once the Enclosed Mall and the other anchor tenant, Bloomingdale's, was constructed and pedestrians began to flow into the Store from those areas.

12.     In or about February 2012, White Flint submitted a redevelopment sketch plan ("Redevelopment Plan") to Montgomery County seeking to significantly change the design, layout size, density and use of the Shopping Center Site.  **See Exhibit B**.

13.      Landlord's Redevelopment Plan shows that Landlord intends to demolish not only the entire Enclosed Mall itself, but also a significant portion of the Common Areas, Lord & Taylor's Leasing Area, the multiple parking lots adjacent to the Store, and the existing street network in place that funnels traffic to the Store.

14.     The Landlord's Redevelopment Plan also unilaterally modifies the entire look, aesthetics, architectural integrity, and location of buildings throughout the entire Shopping Center Site, and detrimentally alters the vehicular and pedestrian traffic flow into the Shopping Center Site and the Store.

15.     Landlord's Redevelopment Plan also improperly changes the primary use of the Site from that of a retail complex to a mixed use redevelopment overly saturated with office[4], hotel and residential uses that are unequivocally prohibited under the Agreement.

16.     Moreover, the new redevelopment would not provide sufficient parking to meet the parking ratios required under the Agreement when combined with the additional and non-permitted uses.

17.     Landlord also intends to wrongfully develop over 5,466,090 square feet of gross floor area on the Site despite the fact that the restrictive covenants prohibits more than 500,000 sq. ft. of floor area being developed.  This additional floor area will create more competition at

---

[4] Only 100,000 sq. ft. of office space can be constructed on the Shopping Center Site under the Agreement.

the Site for which Lord & Taylor never bargained for when it agreed to develop a Store at the Site.   Even worse, rather than placing the new retail elements around or adjacent to Lord & Taylor's Store so as to promote pedestrian flow into the Store as the Enclosed Mall currently does, Landlord intends to spread the new retailers across the Forty Five (45) acre Site while surrounding Lord & Taylor's Store with multi-family housing units and 162 feet high office buildings.

18.     When Lord & Taylor learned that Landlord had submitted its Redevelopment Plan, it immediately put Landlord on notice that the Plan violated the covenants contained in the Agreement.   **See Exhibit C**.

19.     In response, Landlord claimed that it had no intention of violating the Agreement or making any changes to the Site while the Agreement was in effect.   This, however, was false.

20.     In October 2012, Landlord's Redevelopment Plan was approved by the County.

21.     Soon thereafter, Landlord began taking affirmative steps to carry out its redevelopment in violation of the Agreement.

22.     Specifically, in order to make way for the new redevelopment, Landlord demolished the Bloomingdale's anchor store site leaving Lord & Taylor as the only remaining anchor at the Mall.

23.     Landlord also began intentionally vacating the existing Enclosed Mall tenants such that approximately forty percent (40%) of the Enclosed Mall's space is now empty and the remaining tenants are, upon information and belief, on "short-term" leases set to expire in the near future so Landlord can close and subsequently demolish the Enclosed Mall in early 2014. [5]

---

[5] Tenants such Bertrams, UA Nails, Claires Accessories, GapKids, Gap, Mezlan by Gentlemen's, Cache,  Nine West, Easy Spirit, Godiva Chocolate, Easternman Estate Jewelers, Bruno Cipriani, and the U.S. Post office's retail center have left the Enclosed Mall.

24.     Landlord also began marketing its new redevelopment to potential retailers and third parties in order to promote and possibly lease space within the new redevelopment rather than promote and lease the empty space Landlord had created within the Enclosed Mall.

25.     Landlord's actions, combined with the intentionally created high vacancy rates within the Enclosed Mall and its promotion of the new redevelopment in the press and at the County, have caused most customers to simply stop patronizing the Shopping Center Site and Lord & Taylor's Store altogether.

26.     All of Landlord's actions, as described herein, violate the Agreement and the restrictive covenants contained therein.

27.     Further, Landlord cannot develop its Redevelopment Plan without Lord & Taylor's consent.

28.     Lord & Taylor has not consented to Landlord's redevelopment and the unlawful actions Landlord has taken to carry out its Plan because the redevelopment will cause irreparable harm to Lord & Taylor's Store, its customer base, its reputation, and the goodwill it has created and fostered in the community for over thirty years.

29.     Lord & Taylor served Landlord with a Notice of Default and asked Landlord to cease and desist all actions relating to the redevelopment while Lord & Taylor's Agreement was still in place.  A true and correct copy of Lord & Taylor's Notice of Default is attached hereto as **Exhibit D**.

30.     Landlord, however, has not responded to this letter and continues to carry out steps to redevelop the Shopping Center in violation of the Agreement.

31.     All conditions precedent have occurred or otherwise been waived.

**Count I**
**Declaratory Judgment**

32.     Paragraphs 1-31 are incorporated by reference.

33.     The restrictive covenants contained in the Agreement unequivocally prohibit Landlord from constructing the improvements depicted in the Redevelopment Plan without Lord & Taylor's consent.

34.     Lord & Taylor has not consented to any of Landlord's changes, and in fact, has expressly demanded that the Landlord cease and desist carrying out steps to redevelop the Property.

35.     Landlord, however, continues to carry out its redevelopment by, among other things, demolishing buildings, vacating a substantial portion of the Enclosed Mall Tenants for purposes of ultimately closing and demolishing the Mall, and marketing the redevelopment to third parties in an attempt to secure new office and retail leases for the redevelopment.

36.     As such, a justiciable controversy between the parties exists as to whether Landlord can ignore the restrictive covenants set forth in the Agreement and substantially alter, change and modify the Shopping Center Site as depicted in Landlord's Redevelopment Plan without Lord & Taylor's consent.

37.     Lord & Taylor asks the Court to declare that, while the term of the Agreement and the option periods therein (if exercised) are in effect: (i) Landlord cannot redevelop the Property in any way that is inconsistent with the Agreement, including but not limited as described in the Redevelopment Plan, and (ii) the Landlord is required to carry out its obligations under the Agreement, including but not limited to, operating a first class high fashion retail Shopping Center on the Shopping Center Site.

**Count II**
**Specific Performance and Enforcement of the Restrictive Covenants**
**and Request for Preliminary Injunction**

38.     Paragraphs 1-37 are incorporated by reference.

39.     The parties entered into a valid and enforceable Agreement that contains the following restrictive covenants:

a.   Landlord cannot, without the prior consent of Lord & Taylor, alter, modify or change the architectural design or the appearance, or change the number of floors, size or location of the buildings within the Shopping Center Site, or change the size, location or arrangement of the Enclosed Mall, the parking areas and other Common Areas;

b.   Landlord cannot change or modify the Enclosed Mall;

c.   Landlord cannot exceed 500,000 sq. ft. of Floor Area on the Shopping Center Site of which no more than 100,000 sq. ft. of office space can be developed;

d.   Landlord cannot make any changes to the Shopping Center that would unreasonably restrict pedestrian and vehicular traffic; and

e.   Landlord must continually manage and operate the Shopping Center in accordance with present standards of good regional shopping center operation as:

(i) a complex of retail stores, offices (if any) and restaurants which is part of an Enclosed Mall development with related Common Area facilities; and

(ii) a first class high fashion regional shopping center used and occupied only for business of selling goods, wares, merchandise and for offices and restaurants with parking incidental thereto and for no other purpose.

**See Ex. A.**

40.     Landlord has violated the restrictive covenants by demolishing the Bloomingdale's site to make way for the redevelopment, marketing and/or securing new leases for the planned redevelopment as opposed to attempting to secure new and long-term leases for the virtually empty Enclosed Mall, intentionally vacating over 40% of the Mall's tenants and placing the remaining tenants on short term leases with the intent to close the Mall in 2014, and interfering with the current pedestrian flow into Lord & Taylor's store.

41.     If Landlord continues to proceed with the redevelopment, it will further violate the restrictive covenants by: (i) demolishing the Enclosed Mall; (ii) destroying a majority of the Site's Common Areas; (iii) destroying the primary parking lots serving Lord & Taylor's Store and replacing them with 162 feet tall office buildings; (iv) flanking Lord & Taylor's Store in non-retail type uses, including apartment and/or condominium units, open space, office buildings, and a hotel; (v) destroying the current pedestrian flow into Lord & Taylor's Store; (vi) bringing increased retail competition to the Site through the wrongful expansion of additional retail gross floor area;  (vii) removing the interior road that shuttles traffic to Lord & Taylor's Store and interfering with the traffic flow to the Store; (viii) overhauling the entire use of the Site from that of a large regional retail shopping center to that of a mixed use development saturated with over two thousand four hundred and fifty nine (2,459) apartment/condominium units, a three hundred room hotel, and four massive office buildings; and (ix) failing to provide for adequate parking at the Shopping Center at the parking ratios required under the Agreement as well as the  County's requirements for non-permitted uses.

42.     Thus, if Landlord continues, as it has done, to take steps to carry out its redevelopment in contravention of the restrictive covenants, the goodwill, reputation, and existing customer base that Lord & Taylor has developed in the community over the last thirty

(30) years will be irreparably harmed.  To that end, the entire retail complex and anchor store sites that Landlord, Lord & Taylor and Federated created and built over the last three decades will be decimated along with Lord & Taylor's business and its valuable property rights.

43.     Because no adequate remedy at law exists which could address Landlord's breaches and its continued attempt to carry out its Redevelopment Plan in violation of the restrictive covenants, Lord & Taylor respectfully asks the Court to maintain the status quo at the Shopping Center Site by enjoining the Landlord, while the Agreement is in effect, from taking any steps to carry out or construct Landlord's redevelopment to the extent that such actions (i) alter, modify or change the architectural design, appearance, the number of floors, size or location of any of the buildings constructed on the Shopping Center Site, or change or modify the size, location or arrangement of the Enclosed Mall, the parking areas and other Common Areas; (ii) allow any additional floor area other than what is currently constructed to be built on the Site; (iii) allow any other uses other than retail, restaurant, and small office space (not to exceed 100,000 square feet) on the Site; and (iv) make any changes which would unreasonably restrict pedestrian and vehicular traffic to the Shopping Center Site and Lord & Taylor's Store.

44.     Lord & Taylor further asks the Court, in conjunction with maintaining the status quo, to require Landlord to abide by its obligations under the Agreement to operate a first class high fashion regional retail Shopping Center at the Site and enjoin Landlord from taking any steps to prematurely vacate the Mall's retail tenants while the Agreement is in effect.

45.     The equities and public interest overwhelming favor the issuance of this injunction as Maryland law strongly favors upholding a person's valuable property rights as well enforcing a party's contractual obligations.  The parties to this Agreement are both sophisticated commercial entities who negotiated this Agreement at arm's length and with full knowledge of

the terms of the restrictive covenants.  In such situations involving sophisticated parties, the Courts have an even greater interest in enforcing provisions agreed to between the parties. In this regard, Landlord has acknowledged by its execution and performance of its obligations under the Agreement for the last thirty years that it is unequivocally bound by its terms.  Consequently, by issuing the injunction, the Court will be maintaining the status quo and ensuring that Landlord will continue to honor its contractual obligations and operate a first class retail Shopping Center, with a vibrant and tenant occupied Enclosed Mall, while the Agreement is in effect.  To allow otherwise would be giving permission to Landlord to willfully and intentionally breach its contractual obligations, to trample over Lord & Taylor's valuable property rights, and to destroy Lord & Taylor's business at the Shopping Center so that Landlord can reap a bigger profit at the expense of Lord & Taylor and any other entity or person that stands in its way.

46.    Moreover, it would be inequitable to not issue the injunction because Lord & Taylor over the last quarter century has acted in accordance with its own contractual obligations and has generated a significant amount of revenue for the Landlord, not only in terms what Lord & Taylor has paid, but also in the draw its name, reputation and business, has created for the Landlord and other retailers at the Shopping Center.

47.    Finally, by issuing the injunction, the Court will not be indefinitely precluding Landlord from constructing its redevelopment.  Instead, it will simply be requiring Landlord to abide by the terms of Landlord's own Agreement until the term of the Agreement and any exercised option periods expire.  After such time, Landlord will be free to develop any improvements it on the Site.

## Prayer for Relief

**WHEREFORE**, Plaintiff Lord & Taylor, LLC, prays:

A)      That the Court declare that the Agreement precludes Landlord from carrying out and constructing the redevelopment until the term of the Agreement has expired, and that the Agreement requires Landlord to operate a first class high fashion retail Shopping Center on the Shopping Center Site;

B)      That the Court enforce the restrictive covenants contained in the Agreement, preventing Landlord from changing the Shopping Center Site in any way from what is depicted in the plot plan attached to the Agreement;

C)      That the Court grant a permanent injunction enjoining the Landlord from carrying out its Redevelopment Plan to the extent that it violates the restrictive covenants;

D)      That the Court award Plaintiff attorney's fees and costs as permitted under the Agreement; and

E)      That the Court grants such further relief as the Court may deem just and proper.

Respectfully submitted,

Dated:  July 1, 2013                              /s/ *David G. Barger*
                                        David G. Barger, Esq. (Bar Id. No. 14716)
                                        Michael R. Sklaire, Esq. (Bar Id. No. 16471)
                                        Kevin B. Bedell, Esq. (Bar Id. No. 15513)
                                        Michelle D. Gambino, *pending pro hac vice*
                                        Greenberg Traurig, LLP
                                        1750 Tysons Blvd., Suite 1200
                                        McLean, VA  22102
                                        Tel:  (703) 749-1380
                                        Fax: (703) 749-1381
                                        bargerd@gtlaw.com
                                        sklairem@gtlaw.com
                                        bedellk@gtlaw.com
                                        gambinom@gtlaw.com

                                        *Counsel for Lord & Taylor, LLC*

## VERIFICATION

I solemnly affirm under penalties of perjury that the factual allegations set forth in the

Complaint are true to the best of my knowledge, information and belief.


Kurt Schneider