## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (Greenbelt Division)

| | |
|---|---|
| LORD & TAYLOR, LLC, | ) |
| | ) |
| Plaintiff/Counterclaim-Defendant, | ) |
| | ) |
| v. | ) Civil Action No. 8:13-cv-01912-RWT |
| | ) |
| WHITE FLINT, LP, | ) |
| n/k/a WHITE FLINT MALL, LLLP, | ) |
| | ) |
| Defendant/Counterclaim-Plaintiff. | ) |
| | ) |

### ANSWER AND COUNTERCLAIMS

Defendant/Counterclaim-Plaintiff White Flint, LP, n/k/a White Flint Mall, LLLP ("White Flint"),[1] by counsel, hereby answers the Verified Complaint (the "Complaint") filed by Plaintiff/Counterclaim-Defendant Lord & Taylor, LLC ("Lord & Taylor"),[2] stating as follows:

### Parties

1.      White Flint lacks sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph 1 of the Complaint and, therefore, denies the same.

2.      White Flint denies the allegations in Paragraph 2 of the Complaint.  Pleading further, White Flint states that White Flint is a Maryland limited liability limited partnership. White Flint's partners are (i) Lerner Enterprises, LLC, (ii) Tower MD Holdings, LLC, (iii) Gary

---

[1] White Flint, LP changed its name to White Flint Mall, LLLP in 2002.

[2] It is unclear whether Lord & Taylor, LLC is the proper party to this action. Lord & Taylor, LLC alleges in the Complaint (see Paragraph 5, footnote 1) that it is the successor-in-interest to Adcor Realty Corporation ("Adcor"), an original party to the Construction Operation and Reciprocal Easement Agreement (the "REA") relevant to this action. However, Adcor assigned its interests in the REA to Federated Retail Holdings, Inc., which later assigned its interests to LT Propco LLC. White Flint has not received notice of any further assignment. White Flint reserves all rights with respect to Lord & Taylor, LLC's standing in this matter.



**Katten**

Katten Muchin Rosenman LLP

2900 K Street NW
North Tower – Suite 200
Washington, DC 20007-5118
202.625.3500  tel
202.298.7570  fax

M. Abramson, (iv) Ronald D. Abramson, (v) Lawrence E. Lerner, (vi) Iris C. Lerner, and (vii) various Abramson and Lerner family trusts.  The individual partners and family trusts are all residents of Maryland or Washington, DC.  The members of Lerner Enterprises, LLC are Mark D. Lerner, Debra Lerner Cohen, Marla Lerner Tanenbaum, and several Lerner family trusts.  All of these members are residents of Maryland or Washington, DC.  Tower MD Holdings, LLC's sole member is Tower Real Estate Group, LLC.  The members of Tower Real Estate Group, LLC are several Abramson family trusts, all of which are residents of Maryland or Washington, DC.

### Jurisdiction

3.      The allegations in Paragraph 3 of the Complaint are legal conclusions to which no response is required.

### Venue

4.      The allegations in Paragraph 4 of the Complaint are legal conclusions to which no response is required.

### Facts

5.      White Flint states that on September 2, 1975, it entered into a Construction Operation and Reciprocal Easement Agreement (the "REA") with Federated Department Stores, Inc. and Adcor Realty Corporation relating to the development of the White Flint Mall (the "Mall").  White Flint admits that Exhibit A to the Complaint appears to be a true and correct copy of the REA.  White Flint denies the remaining allegations in Paragraph 5 of the Complaint, including the allegation in footnote 1 that Lord & Taylor is a successor-in-interest to Adcor Realty Corporation.

6.      White Flint states that the REA speaks for itself and, therefore, to the extent

**Katten**

KattenMuchinRosenman LLP

2900 K Street NW
North Tower – Suite 200
Washington, DC 20007-5118
202.625.3500   tel
202.298.7570   fax

2

that Paragraph 6 of the Complaint purports to characterize the contents, intent, or meaning of the REA, White Flint denies those allegations. White Flint admits that Bloomingdale's was owned by Federated Department Stores, Inc. at the time the REA was executed.

7.      White Flint states that the REA speaks for itself. To the extent that Paragraph 7 (including subparts (a) through (e)) of the Complaint purports to characterize the contents, intent, or meaning of the REA, White Flint denies those allegations.

8.      White Flint admits the allegations in Paragraph 8 of the Complaint.

9.      White Flint admits that parking lots were constructed around the Mall, which includes the Lord & Taylor store, but denies the remaining allegations in Paragraph 9 of the Complaint.

10.     White Flint admits that a circular road was constructed around the Mall, but denies the remaining allegations in Paragraph 10 of the Complaint.

11.     White Flint denies the allegations in Paragraph 11 of the Complaint.

12.     White Flint admits that it submitted a redevelopment sketch plan to Montgomery County in February 2012. White Flint states that Exhibit B to the Complaint appears to be a true and correct copy of its sketch plan submission to Montgomery County. Pleading further, White Flint states that the sketch plan speaks for itself and, therefore, to the extent that Paragraph 12 of the Complaint purports to characterize the contents, intent, or meaning of the sketch plan, White Flint denies those allegations.

13.     White Flint states that the sketch plan speaks for itself. To the extent that Paragraph 13 of the Complaint purports to characterize the contents, intent, or meaning of the sketch plan, White Flint denies those allegations.

14.     White Flint states that the sketch plan speaks for itself. To the extent that

**Katten**

Katten Muchin Rosenman LLP

2900 K Street NW
North Tower – Suite 200
Washington, DC 20007-5118
202.625.3500  tel
202.298.7570  fax

3

Paragraph 14 of the Complaint purports to characterize the contents, intent, or meaning of the sketch plan, White Flint denies those allegations.

15.     White Flint states that the sketch plan and the REA speak for themselves. To the extent that Paragraph 15 (including footnote 4) of the Complaint purports to characterize the contents, intent, or meaning of the sketch plan or the REA, White Flint denies those allegations.

16.     White Flint states that the sketch plan and the REA speak for themselves.  To the extent that Paragraph 16 of the Complaint purports to characterize the contents, intent, or meaning of the sketch plan or the REA, White Flint denies those allegations.

17.     White Flint states that the sketch plan and the REA speak for themselves.  To the extent that the first and third sentences of Paragraph 17 of the Complaint purport to characterize the contents, intent, or meaning of the sketch plan or the REA, White Flint denies those allegations.  White Flint denies the allegations in the second sentence of Paragraph 17.

18.     White Flint states that, on or about March 9, 2012, Plaintiff sent White Flint the letter attached as Exhibit C to the Complaint, which speaks for itself.  White Flint denies the remaining allegations in Paragraph 18 of the Complaint.

19.     White Flint states that it responded to Plaintiff's March 9, 2012 letter with a letter dated March 23, 2012.  White Flint states that the March 23 letter speaks for itself and, therefore, to the extent that Paragraph 19 of the Complaint purports to characterize the contents, intent, or meaning of the letter, White Flint denies those allegations.  White Flint denies the remaining allegations in Paragraph 19 of the Complaint.

20.     White Flint admits the allegations in Paragraph 20 of the Complaint.

21.     White Flint denies the allegations in Paragraph 21 of the Complaint.

**Katten**

KattenMuchinRosenman LLP

2900 K Street NW
North Tower – Suite 200
Washington, DC 20007-5118
202.625.3500  tel
202.298.7570  fax

22.     White Flint admits that it demolished the Bloomingdale's anchor store, which left Lord & Taylor as the remaining anchor tenant in the Mall.  Pleading further, White Flint states that Bloomingdale's had decided not to extend its lease when its lease term expired in March 2012.  White Flint denies the remaining allegations in Paragraph 22 of the Complaint.

23.     White Flint denies the allegations in Paragraph 23 of the Complaint.

24.     White Flint denies the allegations in Paragraph 24 of the Complaint.

25.     White Flint denies the allegations in Paragraph 25 of the Complaint.

26.     White Flint states that the REA speaks for itself.  To the extent that Paragraph 26 of the Complaint purports to characterize the contents, intent, or meaning of the REA, White Flint denies those allegations.

27.     White Flint states that the REA speaks for itself.  To the extent that Paragraph 27 of the Complaint purports to characterize the contents, intent, or meaning of the REA, White Flint denies those allegations.

28.     White Flint denies the allegations in Paragraph 28 of the Complaint.

29.     White Flint admits that Lord & Taylor sent White Flint a copy of the letter attached as Exhibit D to the Complaint.  Pleading further, White Flint states that the letter speaks for itself, and, therefore, to the extent that Paragraph 29 of the Complaint purports to characterize the contents, intent, or meaning of the letter, White Flint denies those allegations.

30.     White Flint states that it did not respond in writing to the letter attached as Exhibit D to the Complaint, but denies that any response was required.  Pleading further, White Flint states that it has taken steps to pursue the potential future redevelopment of the Mall, but denies that its actions violate the REA, which speaks for itself.  White Flint denies the remaining allegations in Paragraph 30 of the Complaint.

Katten

Katten Muchin Rosenman LLP

2900 K Street NW
North Tower – Suite 200
Washington, DC 20007-5118
202.625.3500  tel
202.298.7570  fax

31.    The allegations in Paragraph 31 of the Complaint are legal conclusions to which no response is required.

## Count I
## Declaratory Judgment

32.    White Flint incorporates by reference its answers to Paragraphs 1-31 of the Complaint as if fully set forth herein.

33.    White Flint states that the REA speaks for itself, and, therefore, to the extent that Paragraph 33 of the Complaint purports to characterize the contents, intent, or meaning of the REA, White Flint denies those allegations.

34.    White Flint admits that Lord & Taylor sent White Flint the letter attached as Exhibit D to the Complaint, which speaks for itself.  To the extent that Paragraph 34 of the Complaint purports to characterize the contents, intent, or meaning of the letter, White Flint denies those allegations.  White Flint denies the remaining allegations in Paragraph 34.

35.    White Flint denies the allegations in Paragraph 35 of the Complaint.

36.    White Flint denies the allegations in Paragraph 36 of the Complaint.

37.    To the extent that Paragraph 37 of the Complaint contains pleaded allegations, White Flint denies that Plaintiff is entitled to any relief in this matter.

## Count II
## Specific Performance and Enforcement of the Restrictive Covenants
## and Request for Preliminary Injunction

38.    White Flint incorporates by reference its answers to Paragraphs 1-37 of the Complaint as if fully set forth herein.

39.    White Flint states that the REA speaks for itself, and, therefore, to the extent that Paragraph 39 of the Complaint purports to characterize the contents, intent, or meaning of the REA, White Flint denies those allegations.

**Katten**

KattenMuchinRosenman LLP

2900 K Street NW
North Tower – Suite 200
Washington, DC 20007-5118
202.625.3500  tel
202.298.7570  fax

40.     White Flint denies the allegations in Paragraph 40 of the Complaint.

41.     White Flint denies the allegations in Paragraph 41 of the Complaint.

42.     White Flint denies the allegations in Paragraph 42 of the Complaint.

43.     White Flint denies the allegations in Paragraph 43 of the Complaint and states that Plaintiff is not entitled to any relief in this matter.

44.     To the extent that Paragraph 44 of the Complaint contains pleaded allegations, White Flint denies that Plaintiff is entitled to any relief in this matter.

45.     White Flint denies the allegations in Paragraph 45 of the Complaint.

46.     White Flint denies the allegations in Paragraph 46 of the Complaint.

47.     White Flint denies the allegations in Paragraph 47 of the Complaint.

To the extent that the paragraph in the Complaint following Paragraph 47 that begins "WHEREFORE" is deemed to contain pleaded allegations, White Flint denies that Plaintiff is entitled to any relief in this matter.

Any allegation in the Complaint not specifically admitted above is hereby denied.

In addition to the answers above, White Flint alleges the following affirmative defenses:

## AFFIRMATIVE DEFENSES

1.     The Complaint fails to state a claim upon which relief can be granted.

2.     Plaintiff's claims are barred by the express terms of the REA.

3.     Plaintiff's claims are barred for lack of standing.

4.     Plaintiff's claims are barred because they are subject to an agreement to arbitrate.

5.     Plaintiff's claims are barred by the doctrine of laches.

6.     Plaintiff's claims are barred by Plaintiff's own material breaches of the REA.

7.     Plaintiff's claims are barred by the statute of limitations.

**Katten**

Katten Muchin Rosenman LLP

2900 K Street NW
North Tower – Suite 200
Washington, DC 20007-5118
202.625.3500   tel
202.298.7570   fax

8.      Plaintiff's claims are barred by the doctrines of waiver and estoppel.

9.      Plaintiff's claims are barred by the doctrines of release and consent.

10.     Plaintiff's claims are barred by the doctrine of unclean hands.

11.     Plaintiff's claims are barred by the doctrine of merger.

12.     Plaintiff's claims are barred by the statute of frauds.

13.     Plaintiff's claims are barred by the doctrine of accord and satisfaction.

14.     The Complaint is barred because Plaintiff has suffered no damages.

15.     The Complaint is barred, in whole or in part, as moot.

White Flint expressly reserves the right to amend its defenses or to plead additional defenses as discovery proceeds.

WHEREFORE, White Flint respectfully requests that this Court (i) deny any and all relief to Lord & Taylor; (ii) enter judgment on Counts I and II of the Complaint in White Flint's favor; and (iii) grant White Flint such other and further relief as the Court deems just and proper.

**Katten**

KattenMuchinRosenman LLP

2900 K Street NW
North Tower – Suite 200
Washington, DC 20007-5118
202.625.3500  tel
202.298.7570  fax

## COUNTERCLAIMS

Defendant/Counterclaim-Plaintiff White Flint, LP, n/k/a White Flint Mall, LLLP ("White Flint"),[1] by counsel, hereby files counterclaims for (i) breach of contract / breach of the implied covenant of good faith and fair dealing and (ii) tortious interference with prospective economic advantage against Plaintiff/Counterclaim-Defendant Lord & Taylor, LLC ("Lord & Taylor"), alleging upon information and belief as follows:

## NATURE OF THE CONTROVERSY

1.      White Flint is the owner and developer of the project on White Flint's property currently known as White Flint Mall.  In order to continue operating the project as a first-class shopping center, White Flint has developed a plan, which has been approved by Montgomery County, to update and revitalize the project site.

2.      Lord & Taylor, a tenant in the mall, has known about the redevelopment plan for years, but never raised an objection with Montgomery County, sought to block the plan's approval, or otherwise took any action to stop the plan from going forward.  Now, however, Lord & Taylor has changed tack and, long after the redevelopment plan was approved, is demanding that White Flint halt the redevelopment entirely.[2]  Lord & Taylor's actions are improper and unlawful, and they have caused and will cause White Flint significant harm.

## PARTIES AND JURISDICTION

3.      White Flint is a Maryland limited liability limited partnership.  White Flint's partners are (i) Lerner Enterprises, LLC, (ii) Tower MD Holdings, LLC, (iii) Gary M. Abramson,

---

[1] White Flint, LP changed its name to White Flint Mall, LLLP in 2002.

[2] Lord & Taylor claims it is only trying to delay, not stop, the redevelopment, since its lease rights will expire in 2055, and White Flint is free to proceed with the redevelopment then.  But there is no practical difference between delaying the redevelopment by 42 years – when, in 2055, the project will be 80 years old – and stopping it entirely.

**Katten**

Katten Muchin Rosenman LLP

2900 K Street NW
North Tower – Suite 200
Washington, DC 20007-5118
202.625.3500 tel
202.298.7570 fax

(iv) Ronald D. Abramson, (v) Lawrence E. Lerner, (vi) Iris C. Lerner, and (vii) various Abramson and Lerner family trusts. The individual partners and family trusts are all residents of Maryland or Washington, DC. The members of Lerner Enterprises, LLC are Mark D. Lerner, Debra Lerner Cohen, Marla Lerner Tanenbaum, and several Lerner family trusts. All of these members are residents of Maryland or Washington, DC. Tower MD Holdings, LLC's sole member is Tower Real Estate Group, LLC. The members of Tower Real Estate Group, LLC are several Abramson family trusts, all of which are residents of Maryland or Washington, DC.

4.      Lord & Taylor, LLC is a Delaware limited liability company whose member is a resident of Delaware.

5.      This Court has jurisdiction over this action under 28 U.S.C. § 1332(a)(1) because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

6.      Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because the events giving rise to White Flint's claims occurred in, and the property that is the subject of this action is situated in, Montgomery County, Maryland.

## FACTS

**A.      The Sublease and the REA**

7.      White Flint is the owner of the improvements presently known to the local community as White Flint Mall (the "Project"),[3] an older regional shopping center located along Rockville Pike in Montgomery County, Maryland. Lord & Taylor is a tenant in the Project pursuant to a sublease agreement with White Flint dated September 2, 1975. See Exhibit 1 (Sub-Lease Agreement) (the "Sublease").

---

[3] White Flint leases the land under the Project from White Flint Associates pursuant to a ground lease.

**Katten**

Katten Muchin Rosenman LLP

2900 K Street NW
North Tower – Suite 200
Washington, DC 20007-5118
202.625.3500 tel
202.298.7570 fax

8.    On September 2, 1975, White Flint, Lord & Taylor (through its predecessor in interest), and Bloomingdale's (through its predecessor in interest) entered into an agreement for the construction and operation of the Project. See Exhibit 2 (Construction Operation and Reciprocal Easement Agreement) (the "REA"). The REA called for White Flint to construct and operate the Project and for Lord & Taylor and Bloomingdale's to construct and operate retail department stores in the Project pursuant to subleases with White Flint.

9.    Lord & Taylor's Sublease provided for an initial term of 35 years and granted Lord & Taylor three 15-year renewal options. See Exhibit 1, at 3 (§ 3). In 2006, Lord & Taylor exercised its first and second renewal options, extending the lease expiration date to February 2042. See Exhibit 3.[4]

10.    White Flint is required under the REA to operate a first-class high fashion shopping center at the Project site. See Exhibit 2, at, e.g., 1 (Recital B), and 59 (§ 8.1).

**B.    The Decline of Malls Like White Flint Mall**

11.    When it opened in 1977, the Project was a cutting-edge retail development. Like other malls of the time, it included multiple levels of fully enclosed first-class retail shops and restaurants flanked by anchor tenants – including Lord & Taylor and Bloomingdale's – surrounded by large surface and structured parking lots.

12.    The retail economy has changed dramatically since the mid-1970s. Interest in, and the economic viability of, high-level enclosed malls like White Flint Mall have waned. Over the past decade, customers have abandoned more expensive indoor malls in favor of popular priced mixed-use, open-air developments that combine multi-level retail, restaurant, entertainment, office, and residential uses.

**Katten**

KattenMuchinRosenman LLP

2900 K Street NW
North Tower – Suite 200
Washington, DC 20007-5118
202.625.3500  tel
202.298.7570  fax

---

[4] Lord & Taylor's extension letter incorrectly recites the Sublease's new expiration date as January 31, 2043.

11

13.     Indeed, many major national retailers are less interested in operating in traditional malls, particularly smaller malls like White Flint Mall.  A large number of enclosed malls have closed across the country in the past two decades due to the changing economics of mall operations and shopping habits.  Construction of "streetfront" or "town center" developments has accelerated while construction of enclosed malls has slowed dramatically.

14.     Over the years, White Flint periodically updated and renovated the Project's buildings and common areas and aggressively courted the type of retailers – including, for example, The Cheesecake Factory, PF Changs, Borders, Pottery Barn, and Dave & Buster's – necessary to make the Project competitive in the greater Washington, DC metropolitan market.  Unfortunately, despite White Flint's best efforts to maintain the Project as a first-class shopping destination, current trends in retail shopping have eroded the Project's customer base.

15.     For example, Bloomingdale's, the Project's largest tenant since the Project opened in 1977, chose, in the face of declining sales, not to renew its lease when its term expired in March 2012.  Lord & Taylor's annual sales also fell significantly over the past decade.

**C.     White Flint's Plan to Redevelop the Project Site**

16.     In light of these macro-economic trends, and particularly given Bloomingdale's decision not to renew its lease, White Flint determined that, in order to continue operating a first-class shopping center on the site, it was imperative to redevelop and revitalize the Project as an exciting open-air, mixed-use facility.

17.     Accordingly, White Flint worked tirelessly with local public officials and community leaders on a plan for revitalizing the Project.  Indeed, White Flint played a critical role in the development of Montgomery County's broader master plan, known as the White Flint Sector Plan (the "Sector Plan"), to redevelop the area around the White Flint Metro station.  The

**Katten**

KattenMuchinRosenman LLP

2900 K Street NW
North Tower – Suite 200
Washington, DC 20007-5118
202.625.3500  tel
202.298.7570  fax

Montgomery County Council unanimously approved the Sector Plan in March 2010 as part of the County's effort to replace suburban sprawl with planned growth around transportation hubs. When complete, the Sector Plan will include approximately 14,000 new residential units, 7.5 million square feet of new commercial and retail space, and $1 billion of new public infrastructure. It is expected to generate nearly 40,000 new jobs and $7 billion in additional tax revenue for Montgomery County over the next 40 years. Lord & Taylor was aware of these efforts by White Flint, as well as the economic and demographic reasons necessitating the creation of a revised master plan, years before the Sector Plan was formally approved.

18.     The Project site is the largest property in the Sector Plan, and, therefore, redevelopment of the Project site is a critical component of Montgomery County's efforts to revitalize the White Flint sector. On November 16, 2011, White Flint held a public meeting at the Dave & Buster's restaurant in the Project to unveil a preliminary plan to redevelop the Project site. This meeting followed numerous meetings and discussions over the preceding year with interested members of the community about the redevelopment. The purpose of the November 16 meeting was to introduce and explain the redevelopment plan and solicit feedback from the community prior to submission of a required sketch plan to Montgomery County. White Flint provided notice of the meeting by posting signs at various locations around the Project site. See Exhibit 4. Lord & Taylor was on notice of the meeting, which was attended by more than 150 people, including representatives of many of the Project's tenants.

19.     Three months later, on February 15, 2012, White Flint filed an application for approval of the required sketch plan with Montgomery County. A copy of the sketch plan is attached as Exhibit 5. As depicted on the sketch plan, White Flint's redevelopment plan calls for the transformation of the Project site into a mixed-use town center. The redevelopment will

**Katten**
Katten Muchin Rosenman LLP
2900 K Street NW
North Tower – Suite 200
Washington, DC 20007-5118
202.625.3500  tel
202.298.7570  fax

include approximately 5.2 million square feet of retail shops, offices, restaurants, apartments, condominium units, and public and private open space spread over 45 acres and clustered around an open-air plaza. The redevelopment will be served by a new network of public and private streets that will connect it to Rockville Pike and accommodate pedestrians, bicycles, and cars.

20.     The plan will, in short, completely revitalize the Project site. In fact, Bloomingdale's has expressed an interest in returning to the Project when it is redeveloped. White Flint will invest nearly $4 billion in the plan over the next two decades. The redevelopment is projected to generate thousands of new jobs and almost $1 billion in new tax revenue for Montgomery County. The plan specifically incorporates Lord & Taylor's current space, which will be surrounded by a mix of residential and retail development. See Exhibit 5, Sheet Nos. SK3 and SK6.

21.     On October 25, 2012, the Montgomery County Planning Board held a public hearing on White Flint's sketch plan application. After the meeting, the Planning Board voted unanimously to approve the sketch plan, noting that it "[f]urthers the recommendations and objectives of the" Sector Plan. See Exhibit 6, at 8.

22.     Since the sketch plan was approved, White Flint has taken steps to advance the redevelopment process. It has demolished the Bloomingdale's store and invested more than $7,000,000 in pre-development work. It has also signed or is close to signing contracts worth more than $24,000,000 with various architects, consultants, contractors, and other vendors. Prior to the approval of the sketch plan in October 2012, White Flint invested approximately $6,000,000 in the redevelopment.

**Katten**

Katten Muchin Rosenman LLP

2900 K Street NW
North Tower – Suite 200
Washington, DC 20007-5118
202.625.3500  tel
202.298.7570  fax

D.    **Lord & Taylor's Unlawful Interference with the Redevelopment**

23.    Lord & Taylor has known about the Sector Plan and, therefore, the plan to redevelop the Project site since, at the very latest, early 2009, when Montgomery County held its first public hearings on the Sector Plan.  Redevelopment of the Project has always been a critical component of the Sector Plan.

24.    Lord & Taylor never objected to the Sector Plan, either in hearings before the Montgomery County Planning Board or hearings before the Montgomery County Council.  Nor did Lord & Taylor raise any public objections to the Project redevelopment itself before the County approved the sketch plan, either at the November 2011 pre-submission meeting, the October 25, 2012 hearing before the Planning Board, or otherwise in communications with representatives of Montgomery County.

25.    Moreover, Lord & Taylor also did not object when White Flint demolished the Bloomingdale's store in late 2012 and early 2013.

26.    In fact, from 2012 to May 2013, Lord & Taylor actively engaged White Flint in discussions about the location and operation of the Lord & Taylor store during and after construction of the proposed and vetted redevelopment.  Lord & Taylor led White Flint to believe it was interested in being part of the redevelopment, which it knew would revitalize the White Flint area, attract quality tenant retailers, and increase foot traffic to its store.  In late 2012, Lord & Taylor even recommended that the parties retain Lord & Taylor's own development consultant, Street-Works, LLC, a real estate consulting firm specializing in mixed-use projects, to assist with a potential relocation of Lord & Taylor to a new site within the proposed redevelopment.

**Katten**
KattenMuchinRosenman LLP

2900 K Street NW
North Tower – Suite 200
Washington, DC 20007-5118
202.625.3500  tel
202.298.7570  fax

27.     In May 2013, much to White Flint's surprise, Lord & Taylor abruptly ended discussions. On May 30, 2013, Lord & Taylor had its lawyers send a letter to White Flint stating that the planned redevelopment violated the REA and the Sublease and demanding that White Flint halt its redevelopment efforts. <u>See</u> Exhibit 7. Then, on July 1, 2013, Lord & Taylor filed the complaint in this action seeking to enjoin White Flint from undertaking the redevelopment until Lord & Taylor's lease rights expire in 2055.

28.     Lord & Taylor's conduct is inconsistent with its obligations under the REA and the implied covenant of good faith and fair dealing that is part of the REA. Lord & Taylor knew that White Flint is required under the REA to operate a first-class shopping center. It has also known for years that, in order to meet that obligation, White Flint has been planning, as part of Montgomery County's Sector Plan, to redevelop the Project site into a mixed-use town center. Yet, during the approval process, Lord & Taylor never asserted any contract rights to the County Council or Planning Board or otherwise tried to stop the plan from being approved by Montgomery County.

29.     Lord & Taylor's improper actions will delay, and potentially derail completely, the redevelopment process, preventing White Flint from meeting its obligation to operate a first-class shopping center at the site and fulfill the demands of the Sector Plan. White Flint has spent millions of dollars to support County-approved goals. It is currently in discussions with many prospective tenants, including key anchor tenants, about leasing space in the redevelopment. Many of these discussions have reached an advanced stage.

30.     Lord & Taylor's actions are jeopardizing White Flint's negotiations with these prospective tenants. The loss of key anchor stores would be devastating to the redevelopment. Moreover, any delay at all in the redevelopment process would have enormous implications for

**Katten**

KattenMuchinRosenmanLLP

2900 K Street NW
North Tower – Suite 200
Washington, DC 20007-5118
202.625.3500  tel
202.298.7570  fax

the project. The redevelopment is projected to generate more than $1 billion in value over the next decade alone. Given escalations in various costs – including construction, financing, and permitting costs – and other factors, every year of delay will reduce the redevelopment's value by hundreds of millions of dollars.

31.     Lord & Taylor understands the impact its actions are having and will continue to have on the planned redevelopment, which is the reason that it waited until White Flint had spent millions of dollars, the planning process was well underway, and Montgomery County had approved White Flint's sketch plan before taking any action to halt the development. Lord & Taylor also understands the effect its actions will have on the Sector Plan and, even more broadly, Montgomery County. The Sector Plan depends upon a mix of public and private financing, including funding from White Flint and other developers in the White Flint sector. Beyond the new jobs and tax revenue that would be lost from the Project redevelopment itself, halting the redevelopment would undermine the funding structure of the Sector Plan, putting the entire plan – and all of the new jobs, tax revenue, roads and other public infrastructure that come with it – at risk.

32.     Lord & Taylor knows all of this, which is why it waited until it did to take action to halt, or at least delay, the redevelopment. Lord & Taylor timed its actions to maximize its perceived leverage in order to extract a payment from White Flint to get Lord & Taylor to drop its baseless objections so that the redevelopment can proceed.

33.     Lord & Taylor's conduct is improper and unlawful, under the Sublease, the REA, and Maryland law.

**Katten**

KattenMuchinRosenman LLP

2900 K Street NW
North Tower – Suite 200
Washington, DC 20007-5118
202.625.3500  tel
202.298.7570  fax

## COUNT I
### (Breach of Contract / Breach of the Implied Covenant of Good Faith and Fair Dealing)

34.    White Flint incorporates by reference the allegations set forth in Paragraphs 1 through 33 of this Counterclaim as if fully set forth herein.

35.    Lord & Taylor materially breached the REA and the implied covenant of good faith and fair dealing that is part of the REA by intentionally waiting until the redevelopment process was well underway and Montgomery County had approved the sketch plan before taking action to stop the redevelopment. Lord & Taylor took these actions in bad faith in order to impede the redevelopment.

36.    Lord & Taylor's actions have frustrated White Flint's ability to continue to try to meet its obligation under the REA to operate a first-class shopping center at the Project site.

37.    As a reasonable, foreseeable, direct, and proximate result of Lord & Taylor's material breaches of the REA and of the implied covenant of good faith and fair dealing that is part of the REA, White Flint has been damaged in an amount in excess of $1,000,000,000.

## COUNT II
### (Tortious Interference with Prospective Economic Advantage)

38.    White Flint incorporates by reference the allegations set forth in Paragraphs 1 through 37 of this Counterclaim as if fully set forth herein.

39.    White Flint has a reasonable expectation of economic advantage from the redevelopment of the Project site. Lord & Taylor is aware of this expectation.

40.    Lord & Taylor intentionally interfered with this expectation by waiting until the redevelopment process was well underway and Montgomery County had approved the sketch plan before taking action to try to stop the redevelopment. Lord & Taylor took these actions with the intent to impede the redevelopment and, thereby, harm White Flint's business.

**Katten**

Katten Muchin Rosenman LLP

2900 K Street NW
North Tower – Suite 200
Washington, DC 20007-5118
202.625.3500  tel
202.298.7570  fax

18

41.     Lord & Taylor's actions were intentional and willful and done without lawful purpose, right, or justifiable cause.

42.     There is a reasonable probability that, absent Lord & Taylor's interference, White Flint would receive the expected economic advantage from the redevelopment of the Project site.

43.     As a reasonable, foreseeable, direct, and proximate result of Lord & Taylor's unlawful interference with the redevelopment project, White Flint has been damaged in an amount in excess of $1,000,000,000.

WHEREFORE, White Flint respectfully requests that this Court issue an Order,

**On Count I:**

(a)     finding that Lord & Taylor materially breached the REA and the implied covenant of good faith and fair dealing that is part of the REA;

(b)     awarding White Flint compensatory damages in an amount to be determined at trial, but not less than $1,000,000,000;

(c)     awarding White Flint such costs, attorneys' fees, and expenses as allowable by law; and

(d)     awarding White Flint such other and further relief as this Court deems just and proper.

**On Count II:**

(a)     finding that Lord & Taylor tortiously interfered with White Flint's rights and expectations with respect to the redevelopment of the Project site;

(b)     awarding White Flint compensatory damages in an amount to be determined at trial, but not less than $1,000,000,000;

**Katten**

Katten Muchin Rosenman LLP

2900 K Street NW
North Tower – Suite 200
Washington, DC 20007-5118
202.625.3500   tel
202.298.7570   fax

(c)      awarding White Flint such costs, attorneys' fees, and expenses as allowable by law; and

(d)      awarding White Flint such other and further relief as this Court deems just and proper.

## JURY TRIAL DEMAND

White Flint demands a trial by jury on all triable issues.

Respectfully submitted,

KATTEN MUCHIN ROSENMAN LLP

By: /s/ S. Scott Morrison
S. Scott Morrison (Bar No. 06540)
David C. Rohrbach (*admitted pro hac vice*)
2900 K Street, N.W.
North Tower – Suite 200
Washington, D.C.  20007
(202) 625-3500 / (202) 298-7570 (fax)
scott.morrison@kattenlaw.com
david.rohrbach@kattenlaw.com

*Counsel for Defendant/Counterclaim-Plaintiff*

**Katten**
Katten Muchin Rosenman LLP
2900 K Street NW
North Tower – Suite 200
Washington, DC 20007-5118
202.625.3500  tel
202.298.7570  fax

## CERTIFICATE OF SERVICE

I hereby certify that, on this 12th day of August 2013, a true copy of the foregoing

Answer and Counterclaims was served electronically through the CM/ECF system on:

> David G. Barger
> Michael R. Sklaire
> Kevin B. Bedell
> Michelle D. Gambino
> Greenberg Traurig, LLP
> 1750 Tysons Boulevard, Suite 1200
> McLean, VA 22102
> bargerd@gtlaw.com
> sklairem@gtlaw.com
> bedellk@gtlaw.com
> gambinom@gtlaw.com

> *Counsel for Plaintiff/Counterclaim-Defendant*

> /s/ S. Scott Morrison
> S. Scott Morrison

**Katten**
KattenMuchinRosenman LLP

2900 K Street NW
North Tower – Suite 200
Washington, DC 20007-5118
202.625.3500  tel
202.298.7570  fax