IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)

| | | |
|---|---|---|
| LORD & TAYLOR, LLC, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | Case No. 8:13-cv-01912-RWT |
| | * | |
| WHITE FLINT, L.P. n/k/a | * | |
| WHITE FLINT MALL, LLP, | * | |
| | * | |
| Defendant. | * | |
| | * | |
| | ****** | |

## MOTION TO DISMISS

Lord & Taylor, LLC ("Lord & Taylor") moves to dismiss White Flint's Counterclaims pursuant to Fed. R. 12(b)(6) and respectfully states as follows:

### Introduction

Greed; White Flint's driving motive in this case. White Flint outlandishly asks the Court to continue to allow it to breach the express provisions of the REA because White Flint stands to make *billions* of dollars if it builds a "town center" rather than continuing to carry out its contractual obligation to Lord & Taylor to run a first class regional *retail* "Shopping Center" on the Shopping Center Site. Knowing that White Flint's actions to construct a highly dense neighborhood chocked full of 2,400 homes, a school, a park, a hotel, and several multi-story office buildings are all unequivocally prohibited by the restrictive covenants binding White Flint, White Flint attempts to create false leverage by asserting groundless counterclaims which seek outrageous sums against Lord & Taylor simply because Lord & Taylor exercised its contractual right to say "no" to the giant developer's plan. Regardless of the enormous profit margins White Flint stands to make by blatantly violating its own obligations, the terms of White Flint's

own contract with Lord & Taylor preclude it from constructing the development and no cause of action lies against Lord & Taylor for simply exercising its rights and enforcing the Construction, Operation and Reciprocal Easement Agreement's ("REA" or "Agreement") terms.

### Motion to Dismiss Standard

The purpose of a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint.  See Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cit. 1999).  The Supreme Court declared that a litigant must plead "enough facts to state a claim to relief that is plausible on its face" in order for it to withstand a motion to dismiss.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).   Conclusory statements or a formulaic recitation of elements in a complaint/counterclaim not sufficient.  Id.  Instead, the factual allegations must be "enough to raise a right of relief above a speculative level."  Id.; see also Ashcroft v. Iqbal, 556 U.S. 662 (2009) (holding that threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice).  This Court also noted that while a court must construe the facts in the light most favorable to the plaintiff, a court need not accept as true a legal conclusion couched as a factual allegation, conclusory allegations devoid of any reference to actual events, or allegations that are merely conclusory, unwarranted deductions of facts, or unreasonable inferences.  Proctor v. Metropolitan Money Store Corp., 645 F.Supp.2d 464 (D. Md. 2009), citing respectively Papasan v. Allain, 478 U.S. 265 (1986); United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979); Veney v. Wyche, 293 F.3d 726 (4th Cir. 2002).

**ARGUMENT & AUTHORITIES**

I. **White Flint Has Not Stated a Claim for Breach of the Implied Covenant of Good Faith ("Count I").**

White Flint claims that Lord & Taylor violated the implied covenant of good faith by virtue of saying "no" to White Flint's Preliminary Sketch Plan ("Sketch Plan") and by failing to sue White Flint earlier to enforce its rights. Because no cause of action lies against Lord & Taylor for simply exercising its contractual rights under the REA and attempting to resolve its dispute with White Flint prior to filing suit, Count I must be dismissed.

  A. **There is No Independent Cause of Action for Breach of the Implied Covenant of Good Faith and Fair Dealing.**

As a threshold matter, Count I fails because there is no independent cause of action for breach of the implied covenant of good faith and fair dealing in Maryland. See e.g., Maryland v. Safeway, Inc., 65 Fed. Appx. 442 (4th Cir. 2003); Baker v. Sun Co., Inc., 985 F. Supp. 609 (D.Md. 1997); Greene v. U.S. Life Ins. Co., 2010 WL3834984 (D. Md. 2010) citing Mount Vernon Props, LLC v. BB&T, 907 A.2d 373, 381 (Md. Ct. Spec. App. 2006). Thus, to the extent that Count I attempts to state an independent cause of action for breach of the implied duty of good faith, it must be dismissed. See id.

  B. **White Flint Has Not Stated a Claim for Breach of Contract.**

To the extent that White Flint is relying upon a general breach of contract theory to support its claim, this too must fail. White Flint has not identified any specific provision within the REA that Lord & Taylor allegedly breached. Instead, White Flint's claims that Lord & Taylor breached the REA because Lord & Taylor *should have* objected to the County's "White Flint Sector Plan" when the County was first discussing its adoption *or* that Lord & Taylor *should have* attempted to interfere in White Flint's own separate entitlement process when White

Flint first submitted its preliminary Sketch Plan to the County for approval on February 15, 2012. These allegations do not state a cause of action against Lord & Taylor for breach of contract.

While Maryland law recognizes an implied duty of good faith and fair dealing in negotiated contracts, "it does not, however, 'interpose new obligations about which the contract is silent'". Eastern Shore Mkts., Inc. v. J.D. Assoc., 213 F.3d 175, 182 (4th Cir. 2000); accord Solid Concepts, LLC. V. Fallen Soldiers, Inc., 2010 WL 3123269 (D. Md. 2010); Parker v. The Columbia Bank, 91 Md. App. 346, 604 A.2d 521 (1992) (refusing to find breach of the covenant of good faith because the lender failed to do something that was not required in the contract documents); Gephardt v. The Mortgage Consultants, Inc., 2011 WL 531976 (D. Md. 2011) (dismissing on a 12b(6) motion a claim for breach of the implied covenant of good faith where the plaintiff attempted to interpose obligations that did not exist within the contract itself as its basis for a breach). Here, the REA does not require Lord & Taylor to object in either of the scenarios for which White Flint relies upon for claiming the REA has been breached. As a result, White Flint's claims must be dismissed.

*First*, there is absolutely no obligation in the REA that requires Lord & Taylor to troll, police, and/or monitor the daily workings of Montgomery County Planning Department in order to determine if any possible policy, change, or long-term strategic planning goal could potentially impact Lord & Taylor's Store on the Site. While it is certainly within Montgomery County's discretion to adopt whatever plan it choses which it believes will carry out the long term goals of the County, those changes in no way superseded Lord & Taylor's contractual rights to lease its Store at the Shopping Center. Instead, Lord & Taylor's rights to the Store are solely governed by its Sublease, the REA, and the restrictive covenants that bind White Flint. Thus,

because the REA does not contain a requirement within it for Lord & Taylor to continually monitor the County's workings and to object to the County's recently adopted "White Flint Sector Plan", White Flint's claim must be dismissed.

*Similarly*, Lord & Taylor is not required under the parties' Agreement to interfere with White Flint's attempt to seek future entitlements from the County for White Flint's own property. To argue otherwise would be absurd. White Flint and/or its affiliates are the fee simple owners of the Property. It would never be in White Flint's interest to *contractually require* its tenants to openly and publicly interfere with every request White Flint may make to County to receive future entitlements for its property --- and no such contractual obligation exists in this case requiring Lord & Taylor's interference in such situations. [1]

Thus, because Lord & Taylor had no obligation to interfere with the County's approval process of its own adoption of the general "White Flint Sector Plan" or White's Flint's own entitlement process, White Flint's claim must be dismissed.

### C. Filing Suit Against White Flint After its Sketch Plan Was Approved Is Not Actionable.

White Flint also contends that Lord & Taylor breached the implied covenant of good faith by suing White Flint after the County approved its preliminary Sketch Plan. This allegation, like the others, is not actionable and fails to state a claim.

The REA does not require Lord & Taylor to interfere with or lodge an objection with the County with respect to White Flint's entitlement process- regardless of the stage it is in. See supra. As a result, this cannot form the basis of a valid breach of contract claim. Moreover, a

---

[1] If anything, it is more likely than not that had Lord & Taylor sought to preclude White Flint's Sketch Plan from being approved with the County, the County would not have entertained Lord & Taylor's objection because it is not the fee simple owner of the Property at issue. Moreover, such interference would have likely opened the door to White Flint asserting a claim against Lord & Taylor for attempting to "wrongfully" interfere with White Flint's entitlement rights. Thus, because Lord & Taylor's rights pertaining to the property arise solely from the agreements between the parties, Lord & Taylor objected in accordance with its obligations thereunder.

rough Sketch Plan is only the first of hundreds of other documents, plans, proffers and other requirements that White Flint will need to complete and ultimately submit to the County and later the public for approval prior to being given the right to actually construct whatever improvements may <u>then</u> be contained in White Flint's <u>final site plan</u> (of which- no final site plan has yet been submitted by White Flint).  <u>See</u> <u>e.g.</u>, Counterclaim, Ex. 6 (listing some of the major items that must still be reviewed, drafted, executed, submitted, and approved by the County prior to White Flint having any rights to construct the Project).  Thus, the County's approval of White Flint's Sketch Plan does not give White Flint the *de facto* right, by any stretch of its imagination, to breach its contract with Lord & Taylor and begin construction of the improvements contained in the Sketch Plan.  <u>See id</u>. (stating that the approval of White Flint's Sketch Plan is in "concept only" and reserves the right for the County to deny any aspect of the Final Site Plan).

In addition, it would be a misrepresentation of fact were White Flint to imply through its counterclaim that it was unaware of Lord & Taylor's objection to its plans prior to filing suit or even prior to the Sketch Plan being approved.  White Flint was on notice repeatedly of Lord & Taylor's objection.  To that end, White Flint submitted the preliminary Sketch Plan to the County on February 15, 2012.  Almost immediately thereafter, on March 9, 2012, Lord & Taylor wrote to White Flint stating:

> **We are in receipt of the "Notice of Sketch Plan Application" dated February 15, 2012 in regard to the proposed redevelopment of the White Flint Mall in Kensington, MD.  Please be advised that the proposed plan is in clear violation of the Construction, Operation, and Reciprocal Easement Agreement dated as of September 2, 1975. . . . Please take note that we do not consent to the plan and will fully and vigorously defend our rights in regard to this matter**.

<u>See</u> Complaint, Ex. C.

White Flint acknowledged in its Answer that it received a copy of Lord & Taylor's objection. See Answer, ¶18. Thus, White Flint knew almost immediately after submitting the Sketch Plan that Lord & Taylor did not consent and would seek to enforce the REA's restrictive covenants should White Flint ever seek to construct the proposed improvements while the Agreement was in effect. See id. Despite this, however, White Flint continued to take steps to advance its project. Worse, based upon the allegations asserted in the Counterclaim, it does not appear that after receiving Lord & Taylor's objection, White Flint[2] - as compared to Lord & Taylor - ever disclosed to the County or any third party that it was precluded from constructing the improvements while the REA was in effect.

Nevertheless, and ironically in a gesture of good faith, Lord & Taylor thereafter met with White Flint numerous times to discuss whether the Sketch Plan or other versions of it would be acceptable. See Counterclaim, ¶26. Lord & Taylor even had White Flint engage a third party consultant, Street Works, to confer with both companies to determine how White Flint could best incorporate Lord & Taylor's Store into the proposed redevelopment so the last thirty five years of Lord & Taylor's efforts to build its customer base in the area would not be destroyed. See id. All of the changes proposed by Lord & Taylor, however, were ultimately rejected. As a result of this and what appeared to be an increasing effort on behalf of White Flint to empty out the existing Enclosed Shopping Center, Lord & Taylor sent a notice of default to White Flint outlining how the proposed redevelopment violated the REA, and asked White Flint to take steps to cure these issues. See Complaint, Ex. D. White Flint, however, took no steps to cure its intentional defaults nor did it even bother to respond to Lord & Taylor's letter.

---

[2] As fee simple owner and/or applicant with the County seeking the actual entitlements

Thus, it is ludicrous for White Flint to now allege that Lord & Taylor should be *punished* for first attempting to first resolve its dispute White Flint rather than immediately filing suit; and certainly no cause of action lies against Lord & Taylor under the implied covenant of good faith and fair dealing for doing just that. As a result, Count I must be dismissed.

      **D.**      **Exercising Lord & Taylor's Rights Under the Agreement Cannot Constitute a Breach.**

In a final (and futile) attempt to state a breach of contract claim, White Flint alleges that Lord & Taylor, by virtue of objecting to its Sketch Plan, is "frustrating" White Flint's "ability to run a first class shopping center at the Project site". See Counterclaim ¶36. This allegation is simply absurd. Lord & Taylor is not *preventing* White Flint from operating a first class regional Shopping Center. To the contrary, it is imploring the Court to require White Flint to do so! White Flint certainly knows how to operate and run a first class retail regional shopping center using an Enclosed Mall concept; it has been doing so for the last 35 years[3]. In addition, White Flint has *not alleged* that it has been unable to attract and keep other tenants and first class retailers at the Shopping Center[4] or that it is has been unable to raise the profile of the Shopping Center so as to make the mall profitable. To the contrary, White Flint has been able to solicit and keep leases with numerous first class retailers such as the Gap, Nine West, Pottery Barn, H&M, Talbots, Cheesecake Factory and other major retailers, but now White Flint has driven, or is currently in the process of driving out those tenants because it wants to demolish the "Shopping Center" and operate a much more lucrative neighborhood "Town Center".

---

[3] Although White Flint speculatively claims that outdoor shopping malls are more of the current "trend", White Flint is not planning on constructing an outdoor shopping mall. Instead, it plans to construct 4,000,000 square feet of non-retail uses which include 2,400 homes, a school, a park, a hotel, and four large story office buildings.

[4] White Flint does not allege Bloomingdales left White Flint because it believed the Mall in any way was failing or not being run as a first class shopping center. Moreover, White Flint fails to indicate whether it urged Bloomies to end its lease with the promise of having a better store or location in its prospective new redevelopment.

Lord & Taylor has the absolute right under the REA to object to White Flint's demolition of the Enclosed Mall, the destruction of its parking lots and the Common Areas, and the complete overhaul of the pedestrian and vehicular traffic flow to Lord & Taylor's Store.  See Complaint, Ex. A.  Therefore, Lord & Taylor cannot be in breach of its own contract by exercising the very rights it was given to object under the contract to object to these changes.  See e.g., Eaglehead Corp. v. Cambridge Cap. Group, Inc., 170 F. Supp.2d 552, 562 (D. Md. 2001) (the implied duty of good faith does not and cannot override specific contract terms), citing Riggs Nat. Bank of Washington, DC v. Linch, 35 F.3d 370, 373 (4th Cir. 1994).

### E.     White Flint Has Not Stated a Claim for Damages Tied to Count I.

White Flint claims "as a reasonable, foreseeable, direct, and proximate result of Lord & Taylor's material breaches of the REA and the implied covenant of good faith and fair dealing…White Flint has been damaged in an amount in excess of $1,000,000,000." Counterclaim, ¶37.  There are absolutely *no facts* stated in the Complaint that support this outrageous demand.  Specifically, White Flint fails to allege how it has lost the benefit of its bargain as a result of Lord & Taylor simply requiring White Flint to carry out its own obligations under the Agreement.  Instead, White Flint wants the Court to outlandishly allow it to recover its speculative lost opportunity cost that it voluntarily agreed to forgo in 1975 when it knowingly agreed that it would not alter, modify or change the Property in any way while the parties' Agreement was in effect.  White Flint's lost opportunity cost is not a recoverable contractual damage - it is simply part of the bargain to which White Flint agreed to thirty years ago.

## II. White Flint Fails to State a Cause of Action for Tortious Interference with Prospective Economic Advantage (Count II).

### A. White Flint Improperly Seeks to Convert an Alleged Breach of Contract into a Tort.

In <u>Alexander & Alexander, Inc. v. Dixon Evander & Associates, Inc.</u>, 336 Md. 635 (1994), the Maryland Court of Appeals stated that the court "has refused to adopt any theory of tortious interference with contract or with economic relations that converts a breach of contract into an intentional tort." <u>Id.</u> at 269-70 (internal citations omitted).  As Count II of White Flint's Counterclaim is merely a restatement of its claim for Breach of Contract in Count I, the foregoing principle is fatal to Count II and it should be dismissed.

In Count II, White Flint alleges that Lord & Taylor intentionally interfered with an expectation of economic advantage "by waiting until the redevelopment process was well underway and Montgomery County had approved the sketch plan before taking action to try to stop the redevelopment." (Counterclaim ¶40).  This same fact, however, forms the alleged basis for White Flint's claim in Count I, which alleged that "Lord & Taylor materially breached . . . the implied covenant of good faith and fair dealing that is part of the REA by <u>intentionally waiting until the redevelopment process was well underway and Montgomery county had approved the sketch plan before taking action to stop the redevelopment</u>." (Complaint ¶35) (emphasis added).  In other words, the same alleged conduct forms the basis for both claims.  Further, the economic damages sought in the prayers for relief on page 19 of the Counterclaim are identical.  Thus, because the parties' rights arise solely in contract, Count II should be dismissed.

### B. Count II Lacks the Requisite Elements for Tortious Interference with a Prospective Economic Advantage.

Count II of White Flint's Complaint should also be dismissed because it fails to state a claim for tortious interference with a prospective economic advantage. In <u>Audio Visual Associates, Inc. v. Sharp Electronics Corp.</u>, 210 F.3d 254 (4th Cir. 2000), the Fourth Circuit noted that under Maryland law, a plaintiff must allege: (i) intentional and willful acts; (2) calculated to cause damage to the plaintiffs in their lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants (which constitutes malice); and (4) <u>actual damage</u> and loss resulting. <u>See id.</u> at 261; <u>Southern Volkswagen, Inc. v. Centrix Financial, LLC</u>, 357 F. Supp. 837, 850-1.

Moreover, when asserting this claim, the plaintiff must specifically "identify a possible future relationship which is likely to occur, absent the interference . . .[a]fter all, without this showing, it is unclear how any of the following elements could be established: causation, damages, or indeed the defendant's wrongful intent to interfere with the relationship". <u>See Baron Financial Corp. v. Natanzon</u>, 471 F.Supp.2d 535 (D.Md. 2006) (internal citations omitted). In <u>Baron Financial Corp. v. Natanzon</u>, 471 F.Supp.2d 535 (D.Md. 2006), this Court noted, with approval, the Reporter's Notes to the Restatement (Second) of Torts, which explain that "an individual must allege more than a disruption of a future relationship to a yet to be determined party – a '<u>reasonable probability</u>' must be shown that 'a contract will arise from the parties' current dealings." <u>Id.</u> at 542 (emphasis added). The Court further noted that all states recognizing this standard require that a party "<u>must</u> establish some evidence that a prospective business relationship is likely to occur." <u>Id.</u> (emphasis in original). In addition, if a contract is not alleged to exist between a third party and the plaintiff, then in order to state a claim for interference with prospective contracts, plaintiff carries a "heavy burden" to factually allege

egregious actions that were wrongfully carried out by the defendant with a "tortious intent". See Volkswagen, 357 F. Supp.2d at 851; Ultrasound Imaging Corp. v. The American Society of Breast Surgeons, et. al., 358 F. Supp.2d 475, 480 (D. Md. 2005) (stating "a plaintiff must plead these egregious acts because 'a broader right to interfere with economic relations exists where no contract or a contract terminable at will is involved'") citing Macklin, 639 A.2d at 117.

Here, White Flint has failed to identify with specificity: (i) what third party it claims it was going to enter into a contract with for the redevelopment; (ii) what specific wrongful actions Lord & Taylor specifically took to interfere with that specific third party relationship, and (iii) how White Flint was harmed by virtue of Lord & Taylor's specific interference in that likely third party contract.

*First*, unlike what is required by Baron, White Flint has not identified any specific third party that it was close to entering into a contract with but for the actions of Lord & Taylor. See Baron, 471 F. Supp. 2d at 546. Instead, White Flint only alleges that it has been involved in "advanced discussions" with potential third parties who *may* be interested in leasing space in the proposed redevelopment. See Counterclaim, ¶29. White Flint does not state specifically who these third parties are, whether any contracts were executed for space in the new redevelopment or, more importantly, how Lord & Taylor specifically interfered in White Flint's negotiations with these specific parties such that the relationships have now terminated. See Baron, 471 F. Supp.2d at 546; Macklin v. Robert Logan Assoc., 334 Md. 287. As a result, White Flint has failed to state a claim.

*Second*, White Flint has failed to sufficiently plead facts as opposed to conclusions that Lord & Taylor has carried out any independently "wrongful act" with any "unlawful purpose" or "malice". A plaintiff must allege that the defendant has engaged in "conduct that is

independently wrongful or unlawful, quite apart from its effect on the plaintiff's business relationship in order to state a claim." Baron, 471 F.Supp.2d at 535.  As defined by this Court, such acts include "common law torts and 'violence or intimidation, defamation, injurious falsehood or other fraud, violations of criminal law, and the institution or threat of groundless civil suits or criminal prosecutions in bad faith." Id.  White Flint's allegations do not even begin to approach this high standard.  Indeed, White Flint does not allege ANY conduct that fits into ANY of the above categories.  To that end, White Flint does not identify or allege any "independently wrongful and improper actions" that Lord & Taylor allegedly took in order to interfere with a specific third party relationship with White Flint.

Instead, White Flint attempts to turn the tortious interference requirements on their head by alleging that Lord & Taylor did *nothing* and SHOULD HAVE either sued it earlier or attempted to interfere with the County's preliminary of its Sketch Plan.  Failing to sue White Flint earlier or stop its Sketch Plan from being approved is not "independently wrongful" or "improper" as required by Baron and Volkswagen.  Moreover, exercising Lord & Taylor's contractual right to object to White Flint's plan is likewise not actionable.  Lord & Taylor has an absolute right to file the lawsuit and object to the demolition of the Enclosed Mall, the destruction of its parking lots and the Common Areas, and the complete overhaul of the pedestrian and vehicular traffic flow to Lord & Taylor's Store.  Lord & Taylor's efforts to assert its contractual rights via this lawsuit in an effort to secure and maintain its own economic advantage in the marketplace and to maintain the benefit of its bargain is highly appropriate and certainly not actionable or independently tortious.  See e.g., Hartmeyer v. Trane Co., 216 F.Supp.2d 500, 505 (D.Md. 2002) (noting that a plaintiff failed to showed no basis for finding

that a defendant's pursuit of a commercial advantage unlawful). Consequently, White Flint has failed to state a claim for tortious interference.

*Third*, White Flint has not alleged that Lord & Taylor's actions were "directed at" an existing or prospective economic relationship as opposed to a mere incidental effect of the allegedly wrongful conduct. See Interphase Garment Solutions, LLC. V. Fox Television Stations, Inc., 566 F. Supp.2d 460 (D. Md. 2008). To that end, White Flint has failed to allege that Lord & Taylor engaged in an independently wrongful and tortious act which was specifically directed at interfering with a specific third party relationship: To the contrary, White Flint claims that Lord & Taylor's actions were directed at allegedly "extracting a payment from White Flint"- as opposed precluding White Flint from contracting with another. See Counterclaim, ¶32. Thus, White Flint's claim fails.

*Finally*, White Flint also fails to allege the <u>actual</u> damages necessary to support a claim of tortious interference with a prospective economic advantage. White Flint erroneously does not allege that it is entitled to damages arising from a specific contract that it purportedly was going to enter into or potentially receive but for the alleged wrongful actions of Lord & Taylor. Audio Visual Associates, Inc. v. Sharp Electronics Corp., 210 F.3d 254 (4th Cir. 2000). Instead, White Flint again claims it is entitled to receive its "one billion" "value" [5] figure that it hoped to gain *over a ten year* period simply because Lord & Taylor exercised its contractual right to say "no" to White Flint's destruction of the Enclosed Mall, Lord & Taylor's parking lots, common areas and the entire road and pedestrian network. White Flint's "pie in the sky" figure is not only

---

[5] White Flint does not define or explain what it means by its use of the term "value". As such, it is unclear if this means profit, or land appreciation, etc.

unrecoverable because of its highly speculative[6] and unincurred nature, it is also unrecoverable because White Flint knowingly agreed to forgo its right to develop its property while the REA Agreement was in effect.  Consequently, while White Flint may not regret agreeing to the REA's restrictive covenants, and damages claimed is a result of White Flint's own doing.  As such, White Flint's claim for damages must be dismissed.

## Request for Relief

Lord & Taylor respectfully asks the Court to dismiss White Flint's claims and award Lord & Taylor any other relief to which it may be entitled.

Dated: September 6, 2013                    Respectfully submitted,

                                                                          /s/  
                                        David G. Barger  
                                        MD Bar No. 14716  
                                        Michelle D. Gambino, *pro hac vice*  
                                        Kevin B. Bedell  
                                        MD Bar No. 15513  
                                        Michael R. Sklaire  
                                        MD Bar No. 16471  
                                        Greenberg Traurig, LLP  
                                        1750 Tysons Blvd., Suite 1200  
                                        McLean, VA  22102  
                                        Tel:  (703) 749-1380  
                                        Fax: (703) 749-1381  
                                        bargerd@gtlaw.com  
                                        gambinom@gtlaw.com  
                                        bedellk@gtlaw.com  
                                        sklairem@gtlaw.com  
                                        *Counsel for Lord & Taylor, LLC*

---

[6] White Flint has not designed, engineered, built, leased, or financed this project nor can it accurately predict with any certainty the cost of materials, the demand for the uses set forth in the plan, the state of the economy when each phase will be built, and the rate of the return it will receive for a ten year period in the future on a project of this size and cost.

CERTIFICATE OF SERVICE

I hereby certify that, on this 6th day of September, 2013, a true copy of the foregoing Motion to Dismiss was filed electronically with the Clerk of the Court using the CM/ECF system, and that service will thereby be accomplished on:

S. Scott Morrison, Esq.
David C. Rohrbach (pending *pro hac vice*)
Katten Muchin Rosenman, LLP
2900 K Street, NW
North Tower – Suite 200
Washington, DC  20007
Tel: (202) 625-3500
Fax: (202) 298-7570
scott.morrison@kattenlaw.com
david.rohrbach@kattenlaw.com
*Counsel for Defendant White Flint Mall*

                                                           /s/
                                      David G. Barger
                                      MD Bar No.  14716
                                      Greenberg Traurig, LLP
                                      1750 Tysons Blvd., Suite 1200
                                      McLean, VA  22102
                                      Tel:  (703) 749-1380
                                      Fax: (703) 749-1381
                                      bargerd@gtlaw.com
                                      *Counsel for Lord & Taylor, LLC*

*TCO 360430545v1*