## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND
### (Greenbelt Division)

| | | |
|---|---|---|
| LORD & TAYLOR, LLC, | * | |
| | * | |
| Plaintiff, | * | |
| vs. | * | Case No. **8:13-cv-01912-RWT** |
| | * | |
| WHITE FLINT, L.P. n/k/a | * | |
| WHITE FLINT MALL, LLP, | * | |
| | * | |
| Defendant. | * | |
| | ****** | |

## PLAINTIFFS MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR STAY AND TO MAINTAIN THE STATUS QUO IN THE LITIGATION PENDING THE INTERLOCUTORY APPEAL OF THE COURT'S DISMISSAL OF COUNT II SEEKING A PERMANENT INJUNCTION FOR DEFENDANT'S UNCONTESTED INTENTIONAL BREACH OF RESTRICTIVE COVENENANTS

Michelle D. Gambino, *pro hac vice*
David G. Barger, Esq. (MD Bar No. 14716)
Kevin B. Bedell, Esq. (MD Bar No. 15513)
GREENBERG TRAURIG, LLP
1750 Tysons Blvd., Suite 1200
McLean, Virginia 22102
Tel.: (703) 749-1380
Fax: (703) 749-1381
bargerd@gtlaw.com
bedellk@gtlaw.com
gambinom@gtlaw.com

*Counsel for Lord & Taylor, LLC
  and LT Propco LLC*

## <u>TABLE OF CONTENTS</u>

Introduction ............................................................................................................. 1

Argument & Authorities .......................................................................................... 2

    I.    Lord & Taylor is Likely to Prevail on the Merits in the Pending Appeal ............. 2

        A.    There Are Issues of Fact that Precluded the Court from Deciding the Ultimate Issue of Whether an Injunction Should Issue on Summary Judgment ................................................................................ 4

        B.    Damages Do Not Need to Be Shown Nor Are They Adequate for Egregious and Intentional Breaches of Restrictive Covenants .................. 9

        C.    The Court's Decision Creates a Split in the Law ..................................... 15

        D.    The County's Interest to Develop the Shopping Center Site is Not Legally Relevant ................................................................................... 15

        E.    White Flint Did Not Move for Summary Judgment on The Basis That A Radical Change in Circumstances in The Area Around the Mall Occurred And Justified Abrogating the Restrictive Covenants ...... 18

        F.    The Doctrine of Comparative hardship Is Not Available to Defendant ............................................................................................. 22

    II.    An Injunction Is a Feasible Remedy to Stop White Flint from Constructing Its Sketch Plan ......................................................................... 23

    III.    Lord & Taylor Will Be Irreparably Harmed If the Litigation is Not Stayed ........ 26

    IV.    White Flint Will Not Be Harmed If the Litigation Is Briefly Stayed to Allow the 4th Circuit to Consider the Interlocutory Appeal ................................ 27

    V.    Public Interest Is Served Because Maryland Has a Strong Public Policy Which Favors Enforcement of Restrictive Covenants Through Injunctive Relief ................................................................................................ 29

Conclusion ............................................................................................................. 29

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

American Canoe Ass'n v. Murphy Farms, Inc.,
326 F.3d 505 (4th Cir. 2003) ...................................................4

Anderson v. Liberty Lobby, Inc.,
477 U.S.242,250, 106 S.Ct. 2505, 91 L.Ed 202 (1986)........................5, 8

Capital Tool and Manufacturing Co., Inc. v. Maschinenfabrick Herkules,
837 F. 3d. 171 (4th Cir. 1988) ................................................9

Chestnut Real Estate Partnership v. Huber,
148 Md. App. 190, 811 A.2d 389 ( 2002)..................3, 6, 7, 9, 10, 11, 13, 15, 16, 24

City of Bowie v. Mie Properties, Inc.,
398 Md. 657, 922 A.2d 509 (2007) ......................13, 15, 18, 19, 21, 22, 24

Coffman v. James,
177 S.2d 25 (Fl. App. 1965) ...............................................10

Colandrea v. Wilde Lake Community Assoc.,
361 Md. 371 (2000) ....................................................18, 22

Coleandrea v. Wilde, Lake Community Ass'n,
351 Md. 371,398-399, 761 A. 2d 899,913 (2000) ...............................23

Dumbarton Imp. Ass'n, Inc. v. Druid Ridge Cemetery Co.,
434 Md. 37, 73 A.3d 224, 234 (2013) .......................5, 8, 14, 15, 20, 21, 29

E.I. DuPont de Nemours & Co. v. Kolon Indus., Inc.,
894 F. Supp. 2d 691 (E.D. Va. 2012) ..........................................9

Eisenstadt v. Barron,
252 Md. 358, 250 A.2d 85 (1969) ......................9, 11, 13, 15, 16, 18, 22, 23, 24

Fayetteville Investors v. Commercial Builders, Inc.,
936 F.2d 1462 (4th Cir.1991) ...............................................4

Greater Baltimore Center for Pregnancy Concerns, Inc. v. Mayor and City Council of
Baltimore,
721 F.3d 264 (4th Cir. 2013) ..............................................4, 5

Grubb v. Guilford,
228 Md. 135, 178 A. 2d. 886 (1962) .....................................18, 22, 23

Local Union 7107 v. Clinchfield Coal Company,
124 F.3d 639 (4th Cir. 1997) ..............................................5, 8

M. Leo Storch Ltd. Partnership v. Erol's, Inc.,
95 Md.App. 253, 620 A.2d 408 (1993).....................................25, 26

McLeod v. Stevens,
    697 F. 2d. 1038 (4th Cir. 1980) ...............................................................................9

Md.-Nat'l Capital Park & Planning Comm'n v. Wash. Nat'l Area,
    386 A.2d 1216 (Md. 1978) ...............................................................................7, 16

Mikolasko v. Schovee,
    124 Md. App. 66 (Ct. Spec. App. Md. 1998) .......................................................16

Minnesota Min. & Mfg. Co. v. U.S. Rubber Co.,
    279 F.2d 409 (4th Cir. 1960) ............................................................................5, 8

Morrison v. Nissan Motor Co.,
    601 F.2d 139 (4th Cir. 1979) ............................................................................5, 8

Podberesky v. Kirwan,
    38 F.3d 147 (4th Cir.1994) ..................................................................................4

Pulliam Inv. Co. v. Cameo Properties,
    810 F.2d 1282 (4th Cir. 1987) ..........................................................................5, 8

Redner's Markets, Inc. v. Joppatowne G.P., L.P.,
    2013 WL 2903285 (D. Md. June 13, 2013).......................3, 5, 6, 7, 11, 12, 13, 15, 16, 24, 29

Souza v. Columbia Park and Rec. Assoc.,
    70 Md. App. 655 (1987), cert. denied, 310 Md. 130 (1987).................................16

Williams v. Staples, Inc.,
    372 F.3d 662 (4th Cir. 2004) ............................................................................5, 8

Lord & Taylor LLC and LT Propco LLC (collectively, "Plaintiff" or "Lord & Taylor") move the Court to stay this Court's December 20, 2013 Order and maintain the status quo pending interlocutory and expedited appeal.  Specifically, Lord & Taylor asks the Court to stay the litigation pending the appeal of the Court's Order dismissing Count II of Lord & Taylor's Complaint which sought specific performance of Lord & Taylor's restrictive covenants and enforcement of such covenants through a permanent injunction.

## Introduction

On December 20, 2013, this Court heard argument on Defendant's Partial Motion for Summary Judgment on Count II of Plaintiff's Complaint ("Motion").  In Count II, Plaintiff sought specific performance of the parties' restrictive covenants and a permanent injunction to prevent Defendant from constructing its Sketch Plan in violation of the parties Construction Operation and Reciprocal Easement Agreement ("REA").  After hearing oral argument, the Court granted Defendant's Motion, presumably finding that no material fact issue existed despite Lord & Taylor's proffered declarations and summary judgment evidence.

In granting Defendant's Motion, the Court found that Lord & Taylor had an adequate remedy at law (i.e., the right to damages) for the annihilation of Lord & Taylor's property rights. The Court further found that the area proximate to where the Shopping Center is located had changed and the redevelopment would benefit Montgomery County.  The Court also stated that it did not believe an injunction would be feasible because it would require the Court to be involved in the mall's daily operations.

Plaintiff respectfully asks this Court to stay this litigation and maintain the status quo pending the outcome of Lord & Taylor's interlocutory appeal of right of the granting of Defendant's Partial Summary Judgment for the following reasons:  *First*, the Court's ruling

creates a significant split between decisions of this Court on the available remedies for violation of restrictive covenants, which split should be resolved by the Court of Appeals.  *Second*, Lord & Taylor can show it is likely to prevail on its appeal as it has shown that there are material issues of fact which should have precluded summary judgment.  *Third*, Lord & Taylor will be irreparably harmed if White Flint is given the *carte blanche* right to willfully violate the restrictive covenants and decimate Lord & Taylor's property rights by demolishing the Enclosed Mall and Common Areas and constructing its proposed (and still unapproved) mixed use development.  *Fourth*, Defendant will not be harmed if a brief stay is granted to allow the Fourth Circuit to consider the appeal because Defendant has not perfected its right to construct its mixed use development.  Specifically, Defendant has not filed its final site plan or any of the required materials with the County in order to immediately construct the development that is at issue in this case.  In fact, even the County acknowledged that White Flint cannot alter the Site and construct any improvements for the next several years (after a final site plan is filed, reviewed, and vetted with both the County and the public).  Consequently, Defendant will not be harmed if this matter is stayed to allow the Fourth Circuit considers whether Lord & Taylor's property rights were adjudicated correctly and whether an issue of fact precluding summary judgment exists.  *Last*, it is in the public's interest to allow each party to have their day in Court and ensure due process is given especially as it pertains to unique and inalienable property rights which are being intentionally discarded.

## Argument & Authorities

**I.   Lord & Taylor is Likely to Prevail on the Merits in the Pending Appeal.**

Lord & Taylor is likely to prevail on the merits of its appeal with respect to the wrongful dismissal of Count II of Plaintiff's Complaint because:

(1) despite a myriad of material fact issues that are before the Court, the Court incorrectly decided, or perhaps ignored, questions of fact at the summary judgment hearing without giving Lord & Taylor the benefit of discovery and, if necessary, a trial on those issues;

(2) the law governing enforcement of restrictive covenants involving real property does not allow the Court to cast side Plaintiffs' property rights, especially where the Defendant has intentionally breached its covenants, simply because the Court speculates that the Defendant's breach will ultimately benefit a third party, and that, in the Court's opinion, damages will be a sufficient remedy.   Damages do not, and cannot, properly compensate Lord & Taylor for Defendant's intentional breach and taking of its property rights.   Furthermore, such relief should not be considered in light of the holdings in Redner's Markets, Inc. v. Joppatowne G.P., L.P., 2013 WL 2903285 (D. Md. June 13, 2013); Chestnut Real Estate Partnership v. Huber, 148 Md. App. 190, 206-211, 811 A.2d 389, 399-401 ( 2002).

(3) what is alleged to be in the "public interest", and specifically the County's alleged desire to see the Shopping Center Site developed into something other than what was promised to Lord & Taylor should not have been considered under applicable Maryland law as the County is a stranger to the private covenants between the parties.   In addition, even if the Court were to consider the County's interests, there are contested issues of fact concerning the extent of the public's interest and whether enforcement of the covenants is in the public interest;

(4) the Court's finding that "changed circumstances" was premature, not supported by summary judgment evidence, and represents a misapplication of Maryland law.   At this stage, before any discovery, and in view of the competing declarations and affidavits, the Court lacked evidence to find that the neighborhood near the Mall had so radically changed as to justify the abrogation of Plaintiffs' real property rights;

(5) the Court was precluded from considering the alleged hardship to the Defendant if an injunction was to be granted because Defendant intentionally breached the parties restrictive covenants, and, thus, the doctrine of comparative hardship was not available to it; and

(6) the injunction sought by Lord & Taylor is a negative injunction, meaning that Count II only asks the Court to maintain the status quo and enjoin White Flint from demolishing the existing Shopping Center Site and constructing the improvements depicted in the Sketch Plan.  Lord & Taylor's Complaint did not ask the Court to supervise mall operations, to fill the mall with tenants, or to reconstruct the Bloomingdales store.  Instead, Lord & Taylor asked the Court to enforce the terms of the REA and enjoin White Flint from violating the restrictive covenants.

**A.  There Are Issues of Fact that Precluded the Court from Deciding the Ultimate Issue of Whether an Injunction Should Issue on Summary Judgment.**

A district court retains the power to reconsider and modify its interlocutory judgments, including partial summary judgments, at any time prior to final judgment when such is warranted.  See American Canoe Ass'n v. Murphy Farms, Inc. 326 F.3d 505, 514 -515 (4th Cir. 2003); Fayetteville Investors v. Commercial Builders, Inc., 936 F.2d 1462, 1469 (4th Cir.1991) ("An interlocutory order is subject to reconsideration at any time prior to the entry of a final judgment.")  It is always the "ultimate responsibility of the federal courts, at all levels, to reach the correct judgment under law."  American Canoe, 326 F. 3d at 515.

"The court's role in deciding a motion for summary judgment is to identify factual issues, not to resolve them."  Greater Baltimore Center for Pregnancy Concerns, Inc. v. Mayor and City Council of Baltimore, 721 F.3d 264, 283 (4th Cir. 2013)(citations omitted.) A district court must "ensure that there is no genuine issue as to any material fact before a grant of summary judgment is proper."  Podberesky v. Kirwan, 38 F.3d 147, 156 (4th Cir.1994) (observing a "motion for

summary judgment ... should be granted only where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law.")

In considering a motion for summary judgment, courts must view the facts and draw all reasonable inferences in favor of the non-moving party, and may not make credibility determinations or weigh the evidence.  See Williams v. Staples, Inc., 372 F.3d 662, 667 (4th Cir. 2004); Local Union 7107 v. Clinchfield Coal Company, 124 F.3d 639, 640 (4th Cir. 1997).  If there are factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is not proper. Anderson v. Liberty Lobby, Inc., 477 U.S.242,250, 106 S.Ct. 2505, 91 L.Ed 202 (1986) ; see also Pulliam Inv. Co. v. Cameo Properties, 810 F.2d 1282, 1286 (4th Cir. 1987); Morrison v. Nissan Motor Co., 601 F.2d 139, 141 (4th Cir. 1979).

Importantly, summary judgment should not be used to prevent full examination of the underlying contested facts.  Minnesota Min. & Mfg. Co. v. U.S. Rubber Co., 279 F.2d 409, 415 (4th Cir. 1960).  Moreover, summary judgment should not be granted when the opposing party has not had the opportunity to conduct discovery.  See Greater Baltimore Center for Pregnancy Concerns, Inc. v. Mayor and City Council of Baltimore, 721 F.3d 264, 281 (4th Cir. 2013).

"The interpretation of a covenant involves both the discovery of facts and the application of legal rules." See Dumbarton Imp. Ass'n, Inc. v. Druid Ridge Cemetery Co. 434 Md. 37, 55, 73 A.3d 224, 234 (2013).  Thus, the Court's decision to grant summary judgment here necessarily involved the resolution of contested facts without giving Lord & Taylor a full and fair hearing on the merits.

The correct legal standards for evaluating whether a permanent injunction should lie for breach of restrictive covenants is set forth in Redner's Markets, Inc. v. Joppatowne G.P., L.P.,

2013 WL 2903285, *4 (D. Md. June 13, 2013).   In <u>Redner's,</u> this Court stated that a party seeking to enforce restrictive covenants through an injunction does **not** have to show irreparable injury, a likelihood of success on the merits, or that issuance of the injunction is in the public interest; rather, the injured party <u>only</u> has to show that: (i) the restrictive covenants exist; (ii) the restrictive covenants have been breached; and (iii) equity favors enforcement.  <u>Id</u>. at *5; <u>see also</u> <u>Chestnut</u>, 148 Md. App. At 206-211, 811 A.2d at 399-401.

As a result, when evaluating Defendant's Motion for Summary Judgment, this Court should have inquired: (i) did Lord & Taylor raise a fact issue as to whether restrictive covenants exist; (ii) did Lord & Taylor raise a material fact issue on the issue of breach; and (iii) did Lord & Taylor raise at least one material fact issue concerning whether the equities weighed in its favor.  The answer to these questions is "yes."

First, Lord & Taylor properly demonstrated in its Opposition to Defendant's Summary Judgment Motion ("Opposition") that there are restrictive covenants that bind the parties and that these restrictions are clear and unambiguous.   <u>See</u> Opposition[1], Ex. A.  Defendant does not dispute the existence of the restrictive covenants or the fact that it is required to comply with the unambiguous terms of the restrictive covenants.

Second, Lord & Taylor demonstrated that Defendant would be in breach of the covenants if it demolished the Enclosed Mall and constructed its mixed use development.  <u>See</u> Opposition, Exs. A, B, Murray, Narva, Schneider, Pall Decls.  Critically, Defendant does not dispute that they are in breach of the restrictive covenants and that its Sketch Plan, if constructed, violates those covenants.

---

[1] "Opposition" shall refer to Lord & Taylor Opposition to Defendant's Motion For Partial Summary Judgment and the summary judgment evidence attached thereto.

Third, Lord & Taylor raised numerous material fact issues concerning the equities of the parties.  As this Court recognized when considering the equities of the parties:

> Maryland law strongly favors upholding the intent of contracting parties through enforcement of contractual terms.  For this reason, enforcement of the restrictive covenant should be denied "*only* where the factors that argue against implementing the particular provision clearly and unequivocally outweigh the law's traditional interest in protecting the expectations of the parties, its abhorrence of any unjust enrichment, and any public interest in the enforcement of the contested term.

Redner's, 2013 WL 2903285 at *6 (emphasis added and internal citations omitted), citing Md.-Nat'l Capital Park & Planning Comm'n v. Wash. Nat'l Area, 386 A.2d 1216 (Md. 1978); Chestnut Real Estate, 148 Md. App. at 205, 811 A.2d at 398.

Lord & Taylor proffered summary judgment evidence in the form of Mr. Pall, Mr. Narva and Mr. Murray's declarations showing how Lord & Taylor's property rights would be decimated if Defendant proceeds.  See Opp., Pall Decl., Narva Decl., Murray Decl.  These Declarations, at a minimum, created material fact disputes since they contradicted Defendant's proffered declarations that the mixed use development would allegedly be "good" for Lord & Taylor.  Furthermore, Lord & Taylor also raised questions of material facts with respect to Defendant's claimed equities.  Specifically, Lord & Taylor attached Mr. Schneider's sworn testimony which raised material fact issues as to whether: (i) White Flint intentionally ran the Shopping Center into the ground and "let the Shopping Center go" by not properly managing, renovating, updating, marketing, and advertising at the Mall so that it could ultimately destroy the mall and pursue redevelopment; (ii) White Flint intentionally vacated tenants from the Mall to make way for the redevelopment contrary to its obligations not to do so; and (iii) the alleged consumer trend relied on by White Flint is illusory as White Flint successfully ran an Enclosed Mall on the premises for the last thirty-five years.  As such, Mr. May and Mr. DeAvilia's

testimony were contradicted in every way and fact issues precluded summary judgment on Count II.

Further, Mr. Kline's declaration demonstrated that, contrary to Defendant's claim, White Flint is nowhere near being able to build its Sketch Plan.  The Enclosed Mall and all of the Common Areas that benefit Lord & Taylor's Store are still standing.  The County has not given Defendant final approval to construct ANYTHING at this point.  No preliminary or final site plan has been submitted to the County nor reviewed.  At best, all the Defendant has at this point is a concept plan - nothing more.  Concepts which may lead a developer to make more money on the Site do not warrant the plain abrogation of restrictive covenants.  Dumbarton, 434 Md.at 68, 73 A.3d at 242. Further, there are numerous other development scenarios that can be carried out on the Site that would further the County's goals for the general White Flint area but which would not violate the restrictive covenants.  See Opposition, Kline Decl.

In short, Mr. Pall, Mr. Schneider, Mr. Narva, Mr. Kline and Mr. Murray Declarations raised numerous and significant material fact issues that disputed the claimed equities of White Flint and warranted the denial of Defendant's Partial Motion for Summary Judgment, given and Lord & Taylor should have been given its day in Court to present a full examination of the contested facts.  Minnesota Min. & Mfg. Co. v. U.S. Rubber Co., 279 F.2d 409, 415 (4th Cir. 1960); Anderson v. Liberty Lobby, Inc.  477 U.S. 242, 250, 106 S.Ct. 2505 (1986); see also Pulliam Inv. Co. v. Cameo Properties, 810 F.2d 1282, 1286 (4th Cir. 1987); Morrison v. Nissan Motor Co., 601 F.2d 139, 141 (4th Cir. 1979);  Williams v. Staples, Inc., 372 F.3d 662, 667 (4th Cir. 2004); Local Union 7107 v. Clinchfield Coal Company, 124 F.3d 639, 640 (4th Cir. 1997).

**B.  Damages Do Not Need to Be Shown Nor Are They Adequate for Egregious and Intentional Breaches of Restrictive Covenants.**

The Court found that White Flint's breach of Lord & Taylor's <u>property rights</u> could be adequately remedied by an award of damages thereby precluding Lord & Taylor from injunctive relief.  Specifically, the Court seemingly applied the test for a *preliminary* injunction when and determined that damages could compensate Lord & Taylor for the willful violations of its covenants.  This, however, is error and now has created a split in this Court as to what the appropriate remedy is in Maryland for the willful breach of restrictive covenants.  Specifically, the Court was required to apply Maryland's state substantive law to determine whether a permanent injunction should issue for breach of restrictive covenants.  <u>See E.I. DuPont de Nemours & Co. v. Kolon Indus., Inc.</u>, 894 F. Supp. 2d 691, 706 (E.D. Va. 2012)(observing that applying Federal law to the question of injunctive relief would "trench upon the rule of *Erie*"); <u>Capital Tool and Manufacturing Co., Inc. v. Maschinenfabrick Herkules,</u> 837 F. 3d. 171, 173 (4th Cir. 1988); <u>McLeod v. Stevens,</u> 697 F. 2d. 1038, 1041 (4th Cir. 1980)(observing that the remedy to which a plaintiff s entitled is a question of state law).  Had the Court done so in this case, it would have found that an injunction was a proper remedy available to Lord & Taylor because there is no adequate remedy at law for the intentional breach of the restrictive covenants. <u>Chestnut,</u>, 148 Md. App. at 211, 811 A. 3d at 401.

Maryland's state substantive law specifically holds that permanent injunctions may issue <u>as a matter of course</u> if a restrictive covenant is violated because money damages cannot make a party whole for the breach of a party's unique and distinct property right.  <u>See</u> <u>e.g.</u>, <u>Chestnut,</u>, 148 Md. App. at 211, 811 A. 3d at 401 (an equitable restriction on land has been held to be a property right in the person in favor of whose estate it runs or to which it is appurtenant); <u>Eisenstadt v. Barron</u>, 252 Md. 358, 371, 250 A.2d 85, 92 (1969).

Because Maryland State law applies to whether a permanent injunction was an appropriate remedy for the willful violations of Lord & Taylor's restrictive covenants, the holding in Chestnut Real Estate Partnership v. Huber, must be considered.  148 Md.App. 190 at 211, 811 A. 2d at 399.  In Chestnut, a Neighborhood Advisory Board sought a preliminary injunction against developer of assisted living housing to enforce residential restrictive covenants.  In Chestnut, the defendant argued that damages should be awarded in lieu of injunctive relief.  After closely examining the issue of whether damages could be sufficient for an intentional breach of restrictive covenants, the Court resoundingly found that it could not.  In so holding, the Maryland Court of Special Appeals adopted the learned treatise of Equity Jurisprudence which holds:

> **The injunction in this class of cases is granted almost as a matter of course upon breach of the covenant.  The amount of damages, and even the fact that the plaintiff has sustained any pecuniary damages, are wholly immaterial…It is clearly established by authority that there is sufficient [harm] to justify the court interfering if there has been a breach of covenant…. The moment the court finds that there has been a breach of the covenant, that is an injury, and the court has no right to measure it, and no right to refuse to the plaintiff the specific performance of his contract, although his remedy is … an injunction.** Chestnut,  148 Md.App. at 209, 811 A.2d at 400 citing 4 J.N. Pomeroy, EQUITY JURISPRUDENCE, § 1342 at 942–43 (5th ed., Spencer W. Symons ed., 1941)(further citations omitted)(emphasis added).

The Court also adopted the rationale set forth in Coffman v. James with respect to whether damages are appropriate as opposed to injunctive relief for a breach of a party's restrictive covenants:

> **It is well established in this jurisdiction that even in the absence of a showing of irreparable injury injunctive relief is grantable as a matter of right, subject only to sound judicial discretion, to restrain the violation of a restrictive covenant affecting real estate.  It is the theory of the law that every piece of land has a peculiar value, infringement of which is not readily remedial by assessment of damages of law.  And were the facts are clear and undisputed, the court by means of a mandatory injunction may compel the undoing of a thing already done in violation of such covenants**.

177 S.2d 25, 31 (Fl. App. 1965) (internal citations omitted) (emphasis added).

Thus, Maryland law has consistently held that damages are wholly insufficient for a breach of a restrictive covenant and that the remedy for such a violation is a permanent injunction.  Chestnut, 148 Md.App. at  210, 811 A.2d at 401 (citations omitted); Eisenstadt v. Barron, 252 Md. 358, 371, 250 A.2d 85, 92 (Md. 1969).

This Court in Redner's examined whether it was required to follow the federal or state substantive law with respect to determining whether a permanent injunction should issue for breach of a party's restrictive covenants. 2013 WL 2903285 at *6.  After considering the issue, Judge Bennett found that Maryland's substantive law controls and that a non-breaching party need not show that they will be irreparably harmed in order for an injunction to issue for breach of a party's restrictive covenants.  See Id. at *2.

In Redner's, Redner's Markets, a tenant, sued its landlord, Joppatowne, for violating the parties restrictive covenant by leasing space in neighboring shopping centers to Redner's competitors.  See id.  Leasing such space violated the parties' lease whereby Joppatowne agreed it would not lease space to competitive food stores within a five mile radius of Redner's store.  See id.  Redner's asked the Court to enforce the restrictive covenants by way of injunction, eject the competitors that Joppatowne improperly leased space to, and to award it damages from the time of the breach until the ejectment of the competitors.  See id.  The landlord, however, argued that damages (through lost sales) could be measured and therefore Redner's had an adequate remedy at law negating the need for an injunction.  See id.  This Court, however, rejected the landlord's argument finding that damages were not relevant to the determination of whether an injunction should issue because irreparable harm need not be shown.  See id. at *4.  The Court's rationale in rejecting the landlord's argument was based on two factors.  First, the Courts of Appeals in Maryland have stated that a permanent injunction is an appropriate remedy for the

violation of a restrictive covenant, because where specific performance is proper, equity may accomplish the same result permanently though an injunction.  Second, "[b]ecause a permanent injunction to enforce a restrictive covenant is much like a request for specific performance, Maryland courts have held that where an injunction is sought to enforce a restrictive covenant, "the rule requiring a showing of irreparable harm does not apply". Id. at *4 (citing Chestnut). Thus, this Court adopted the Maryland state law standard for determining whether an injunction should be issued for breach of a restrictive covenants and found that all that must be shown for an injunction to issue is that restrictive covenants exist, a breach has occurred, and equity favors enforcement.  See id.  Redner was not required to show that damages were unable to make it whole in order for an injunction to lie.  Instead, they are presumed to be inadequate because such restrictive covenants are considered unique property rights that must be enforced by means of an injunction.  See id.

After the Court issued an injunction in Redner's favor, Joppatowne asked the Court to stay the injunction again on the basis that the Court again erred because damages could allegedly make Redner's whole for Joppatowne's breach.  This Court, as well as the Fourth Circuit who declined to hear Joppatowne's interlocutory appeal again rejected this argument.  See Redner's, 2013 WL 5274356 (Sept. 17, 2013), Order Denying Stay of Permanent Injunction Pending Appeal, (Case No. 1:11- CV-1864-RDB) (attached).

Here, the Court should have applied Maryland's state substantive law as it did in Redner's to determine whether Lord & Taylor could seek permanent injunctive relief for Defendant's willful violation of the restrictive covenants.  Had the Court done so, damages would have been presumed insufficient and the only issue for the Court to determine would have been whether Lord & Taylor raised a fact issue concerning whether the equities favored

enforcement by way of injunction.  Redner, 2013 WL 2903285 at *6.  As demonstrated *supra*, Lord & Taylor not only raised material fact issues demonstrating how it would be harmed and why equity favored the enforcement of the covenants, it also disputed the claimed equities of Defendant who continues to intentionally violate the covenants to this day.

From a practical standpoint, if this Court's ruling stands that damages can adequately compensate Lord & Taylor for willful and egregious violations of its restrictive covenants (even though there will be no way of determining how Lord & Taylor will be harmed in the next twenty years as redevelopment takes place), then restrictive covenants in Maryland will be rendered meaningless and landowners throughout the State will have no viable means to enforce such covenants.

For example, if two landowners bought homes in a residential subdivision subject to restrictive covenants requiring that properties shall only be used for residential purposes, then both parties have the reasonable expectation that those covenants will be enforced if violated.  If one of the parties, however, decides to tear down his house and build a commercial waste treatment plant on his premises (with full knowledge that the restrictive covenants prohibits him from doing so), it cannot be the law that the breaching party can continue on with his intentional breach of the covenants provided he simply throws money at the non-breaching party hoping it will suffice for his breach.  Yet this is exactly what White Flint has convinced the Court to allow it to do!  Such an approach, however, has been rejected by not only this Court in Redner's, but also numerous Maryland Courts who have found that the proper remedy to stop a willful violation of restrictive covenants is injunctive relief- not damages.  See Chestnut, 148 Md.App. at  210, Eisenstadt v. Barron, 252 Md. 358, 371, 250 A.2d 85, 92 (Md. 1969), City of Bowie v.

Mie Properties, Inc., 398 Md. 657, 688, 922 A.2d 509, 528 (2007); Dumbarton Imp. Ass'n, Inc. v. Druid Ridge Cemetery Co., 434 Md. 37, 68, 73 A.3d 224, 242 (2013).

White Flint is unequivocally prohibited from demolishing the Enclosed Mall and constructing the improvements depicted in their proposed Sketch Plan. See Opposition, Ex. A. Lord & Taylor will be irreparably harmed if this occurs. See id., Pall, Murray, Narva, Schneider Decl. Nevertheless, White Flint tells the Court to turn a blind eye to its willful violation of the covenants, allow it to destroy all of the improvements currently constructed on the Site (**all of which are still standing and are within this Court's power to stop**), and simply see how White Flint's new business model works out for Lord & Taylor over the next twenty plus years once its plan is constructed (if White Flint, in fact, decides to build all four phases of its plan). Such an approach, as employed by White Flint here, stands the law on restrictive covenants on its head, goes against well settled case law in Maryland, and makes holders of restrictive covenants powerless in Maryland to enforce even the most heinous violations of their covenants. Make no mistake, the Defendant in this case is a *for-profit* company. It did not propose its Sketch Plan and lobby Montgomery County out a beneficent sense of public service. It calculated it could make billions of dollars by intentionally breaching Lord & Taylor's bargained for covenants. If an injunction does not lie here, for facts this egregious and where Defendant **admits** that it is breaching the covenants and intends to completely demolish the Mall, the parking lots, Lord & Taylor's pedestrian bridge, its visibility, and construct office buildings, and 2,500 apartments and flank Lord & Taylor's store in non-retail uses which are expressly prohibited under the REA, then restrictive covenants will have no legal effect in the State of Maryland and equity would be useless to enforce such covenants. Such a notion, as seemingly permitted here, is contrary to Maryland law and has been renounced repeatedly by this Court and

the Maryland Courts of Appeal and Special Appeal.  See City of Bowie v. Mie Properties, Inc., 398 Md. 657, 688, 922 A.2d 509, 528 (2007); Dumbarton Imp. Ass'n, Inc. v. Druid Ridge Cemetery Co., 434 Md. 37, 68, 73 A.3d 224, 242 (2013); Eisenstadt, 252 Md. 358, 371 (1969); Redner's, 2013 WL 2903285, *4 (D. Md. June 13, 2013); Chestnut, 148 Md.App. at 209.  Thus, it was error for the Court to determine that summary judgment should be granted on the ground that damages were sufficient to make Lord & Taylor whole for the breach of its property rights.

**C.  The Court's Decision Creates a Split in the Law.**

At a minimum, it is apparent that this Court's decision differs from the decisions holding that the remedy for breach of a restrictive covenant is an injunction.  *See* Redner's Markets, Inc. v. Joppatowne G.P., L.P., 2013 WL 2903285 (D. Md. June 13, 2013).  There thus are two decisions of this Court, within less than a year of each other, reaching different conclusions on the same issue.  The Court has created the perfect situation for appellate review, regardless of which decision one believes to be correct.

A stay is appropriate to allow that review to occur.  As discussed below, Lord & Taylor will be irreparably harmed if there is no stay and White Flint proceeds to demolish the mall and the real property protections Lord & Taylor bargained for on the Site.  White Flint, on the other hand, will not be harmed by a brief stay as discussed below.  Accordingly, a stay is appropriate pending appeal.

**D.  The County's Interest to Develop the Shopping Center Site is Not Legally Relevant.**

In deciding to grant White Flint's Motion for Partial Summary Judgment, the Court presumably weighed Mr. Silverman's opinion and credibility concerning whether the County would like to see the property ultimately redeveloped more heavily than those witnesses who provided declarations on behalf of Lord & Taylor who testified that any redevelopment would

decimate Lord & Taylor's property rights.    Considering Mr. Silverman's opinion and determining ultimate issue of fact on summary judgment was error.

The Court should not have considered Mr. Silverman's purported view on the issue of whether the property at issue should be redeveloped.  Instead, the Court must only consider the equities of the parties who are bound to the restrictive covenant when determining if the injunction should issue.  See Redner's, 2013 WL 2903285 at *6 (emphasis added and internal citations omitted), citing Md.-Nat'l Capital Park & Planning Comm'n v. Wash. Nat'l Area, 386 A.2d 1216 (Md. 1978); Chestnut, 811 A.2d at 398; Eisenstadt, 252 Md. at 371 (granting an injunction to enforce a restrictive covenant even though the party violating the covenant claimed it would adversely affect the County, noting the covenant was clear and unambiguous and was only between the two parties).  Because the County is a stranger to the REA and has no privity of contract with either Lord & Taylor or White Flint, then the County's purported equity is irrelevant to the enforcement of the restrictive covenants.

Similarly, the fact the County approved Defendant's Sketch Plan does not abrogate or in any way undermine the enforceability of restrictive covenants.  Mikolasko v. Schovee, 124 Md. App. 66, 88 (Ct. Spec. App. Md. 1998).  The Maryland Court of Special Appeals stated in Mikolasko that irrespective of governmental approval of a new land use plan for a parcel subject to restrictive covenants, a permanent injunction is entirely appropriate remedy for violations of private covenants and restrictions.  See id., citing Souza v. Columbia Park and Rec. Assoc., 70 Md. App. 655, 657 (1987), cert. denied, 310 Md. 130 (1987).  Thus, the County's approval of Defendant's preliminary Sketch Plan should not have been afforded any weight or carried any legal significance.

In addition, Lord & Taylor raised numerous issues of material fact that precluded summary judgment as it pertains to the County's interest in the property.   To that end, Lord & Taylor demonstrated that: (i) the County knew when it drafted the White Flint Sector Plan that Lord & Taylor had rights to the property that could affect redevelopment (and such rights are noted within the White Flint Sector Plan itself); (ii) redeveloping the Shopping Center Site is not vital to the County or the White Flint Sector Plan because the Site falls outside the core area for which the White Flint Sector Plan focusses primarily upon (i.e., areas within a quarter mile radius of a metro); (iii) the Shopping Center Site comprises less than ten percent of the total land area falling within the White Flint Sector Plan; (iv) the County could still receive sufficient tax revenue from the Site if it is run, as required, as a first class Enclosed Mall Shopping Center; and (v) there are numerous other developmental scenarios that White Flint could pursue on the Shopping Center Site that would further the County's goals for the general area while at the same time not violating Lord & Taylor's property rights.   See Opposition, Kline Declaration. Thus, even if this Court contends it was within its right to consider Mr. Silverman's view, a fact issue concerning the County's interest was created and should have precluded summary judgment.

Finally, one of the basis for the Court's decision in granting Defendant's Summary Judgment was that the public has an interest in "trying to solve the problems with the White Flint Mall" and make it into a "viable enterprise".   The alleged "problems" Defendant claimed it was experiencing at the mall in terms of failing to be able to keep a customer base, however, were disputed by Lord & Taylor through Mr. Schneider's Declaration and numerous issue of fact existed concerning whether White Flint created the very problem the Court now alleges should be fixed.   This alone should have precluded summary judgment.   White Flint successfully ran a mail with first class tenants on the site for thirty-five years.   See Opposition, Schneider Decl.

White Flint's tenants did not leave the Shopping Center Site willingly – they were forced out. See id.  Thus, White Flint cannot be allowed with a straight face to throw its own tenants out of the Mall and then contend to the Court that because it cannot attract customers to this environment any longer (because of its own actions), it should be permitted to simply disregard the covenants and start building something new.  Equity does not support such an approach nor have Court's permitted such conduct to serve as the basis for defeating an injunction.  See City of Bowie v. MIE Properties, Inc., 398 Md. 657, 687 (2007) (court rejected a claim that landowner should be permitted to discard the restrictive covenants when it realized it made a poor business decision in agreeing to the covenants at the outset); Eisenstadt, 252 Md. at 371, 250 A.2d at 92 (courts do not reward landowners who intentionally violate restrictive covenants by failing to issue an injunction even though the landowner expended money and effort in carrying out its breach);  Colandrea v. Wilde Lake Community Assoc., 361 Md. 371, 397-8 (2000); Grubb v. Guilford, 228 Md. 135, 178 A. 2d. 886 (1962).

**E.  White Flint Did Not Move for Summary Judgment on The Basis That A Radical Change in Circumstances in The Area Around the Mall Occurred And Justified Abrogating the Restrictive Covenants.**

In granting Defendant's Motion for Summary Judgment, the Court stated that significant changes have occurred in the Rockville area and the Court was going to allow the violations of the covenants to continue as a result.  White Flint neither moved for summary judgment on this basis nor carried its burden of proof to allow the Court to make such a finding as a matter of law.

Where it is argued that covenant should not be enforced under Maryland law due to changed circumstances, the next step in the analysis is to determine if there have been radical changes in the neighborhood causing the restrictions to outlive their usefulness such that they are

inconsistent with the changing area.  City of Bowie v. MIE Properties, Inc., 398 Md. 657, 687 (2007).

For such a doctrine to apply, the Rockville area immediately surrounding the Mall would have had to so substantially change that the objective and purpose of the restrictive covenants could no longer be met.  Here, the objective of the covenants was clear.  The parties intended that only a regional retail Enclosed Mall Shopping Center would be constructed and operated on the Site until the term of the Agreement had expired.  See Opposition, Ex. A.

White Flint's Motion for Summary Judgment was devoid of any summary judgment evidence – let alone uncontradicted evidence – showing that a dramatic change in the neighborhood around the Mall occurred and such changes would now be **inconsistent** with operating a regional retail Enclosed Mall on the Site.  To the contrary, White Flint argues that not only do they want to keep operating a Shopping Center on the Site, they want to operate a more lucrative one by demolishing the "enclosed" mall and constructing an "outdoor" shopping center.  Such a position negates – rather than demonstrates – that any radical change in circumstance has occurred which would warrant the abrogation of Lord & Taylor's restrictive covenants on the Site.

Moreover, White Flint has not come forward with any summary judgment evidence demonstrating (as a matter of law) why the restrictions on uses other than non-retail use on the Shopping Center Site should be abrogated.  White Flint does not contend there is a housing shortage in the area or contend that residential housing up and down Rockville Pike has sprung up so dramatically that allowing residential use on the Property is now necessary.  Not only are these allegations absent from White Flint's summary judgment motion, any such notions are expressly contradicted by Mr. Kline who testified that there is no need for residential housing

units to be developed on the Shopping Center Site because numerous other owners are already in the process of constructing residential housing in the White Flint Sector area.

In addition, the fact that the County passed the White Flint Sector Plan does not indicate a radical change in circumstances.  To the contrary, the County's White Flint Sector Plan – which pertains to 450 acres of land as opposed to just the Shopping Center Site – is a multi-decade plan representing what the County's <u>prospective</u> goals for the area as a whole tied to mass transit.  <u>See</u> Opposition, Kline Decl.  In order to set aside covenants on the basis of a radical change in circumstances, the changed circumstances need to CURRENTLY EXIST and effectively override inconsistent covenants.  Such circumstances do not exist here nor is there summary judgment evidence in the record that establish such factors as a matter of law.

The Court of Appeals in <u>Dumbarton</u> considered arguments similar to those that have been generally alleged by White Flint in this case in an attempt to avoid the restrictive covenants, and upheld covenants that were over 100 years old because the objective of the covenants could still be fulfilled irrespective of the claimed change in circumstances.  In <u>Dumbarton</u>, the owner of a cemetery sought to sell 200 acres of his property to a developer to use to build residential units on the property.  The 200 acres was subject to a restrictive covenant that required that the land only be used for a cemetery and no other use.   434 Md. at 68, 73 A.3d at, 242.   The neighborhood association in and around the cemetery challenged any sale stating that the purpose of the covenants was still valid and the restrictive covenants were binding on its owner.

The owner, however, argued that the neighborhood around the cemetery had radically changed and that a dramatic increase in the population occurred warranting the need for more residential housing in the area.  <u>See id</u>.  The owner also used aerial photographs to show that what was once a largely agrarian and sparsely populated area had become a densely populated

commercial hub.  See id.  The respondents also noted the current use of the Cemetery as a shortcut between area arterial roads to other residential subdivisions.  See id.  The Court of Appeals, however, found that that there was no nexus between the demographic and economic changes that had taken place and the abrogation of the covenants.  Because the land could still be used as a cemetery in the area, then circumstances had not sufficiently changed so as to warrant the abrogation of the covenants.

The Court of Appeals also stated that the fact that the owner of the property could make more money without the covenants due to the housing bubble in the area was of no legal consequence as "ensuring the best fiscal outcome is not the test for the ongoing validity of a covenant." 434 Md. at 67, 73 A.3d at 241.  Courts should not, as the Court of Appeal warned, "invalidate plainly written [restrictive] covenants to save a party from what may [later] prove to be a poor business decision."  Id. citing Bowie, 398 Md. at 683, 922 A.2d at 525.

White Flint is seeking relief akin to the landowner in Dumbarton yet failed to even attempt to make the requisite showing that Dumbarton did in attempting to set aside the covenants. Irrespective, White Flint has not carried its burden as none of the changes in the vicinity of the mall frustrate the covenant's ability to achieve the purpose expressed in its language or affect its ongoing validity, and these are exactly the same type of arguments rejected by the Court in Dumbarton.  See Dumbarton, 434 Md. at 68, 73 A.3d at 242.

Finally, the radical change in circumstances complained of in the area that warrants the abrogation of the covenants must be caused by factors outside of White Flint's own control.  See id.  Here, although White Flint complains that the Mall turned into "a turkey" and that Bloomingdales is no longer standing, those factors do not constitute radical changes in circumstances outside of White Flint's control which would allow the covenants to be set aside.

To the contrary, those very changes were caused by the actions of White Flint – not the community surrounding the Shopping Center Site. White Flint does not dispute that it demolished Bloomingdales nor does it dispute that it drove out the mall's retail tenants. See Answer at ¶ 22; Opposition, Schneider Declaration. Consequently, such factors cannot now be used as a justification to allow White Flint to unilaterally breach the restrictive covenants. See Bowie, 398 Md at 687, 922 A.2d at 527.

**F.  The Doctrine of Comparative Hardship Is Not Available to Defendant.**

White Flint implored the Court to grant its summary judgment on the basis that it spent $7 million dollars on its Sketch Plan and that it will be harmed if it needs to continue to honor its covenants because it is in talks to have new tenants possibly lease areas within a new redevelopment. The well settled law in Maryland specifically states that the hardship to a defendant who violates restrictive covenants intentionally cannot be considered. City of Bowie, 398 Md. at 688; Eisenstadt, 252 Md. at 371, 250 A.2d at 92; Colandrea v. Wilde Lake Community Assoc., 361 Md. 371, 397-8 (2000); Grubb v. Guilford, 228 Md. 135, 178 A. 2d. 886 (1962).

Here, the Court assumed for purposes of its ruling that White Flint intentionally violated the covenants. That assumption was correct, as a comparison of the covenants to the Sketch Plan clearly showed that the Sketch Plan did not conform to White Flint's obligations. As a result, the Court should not have considered the purported hardship on White Flint for spending sums on a plan when it never received Lord & Taylor's consent to proceed with such a plan as required in Section 6.1(b) of the REA. Similarly, any communications White Flint has had with third parties concerning possibly leasing space in the new proposed redevelopment also should not be considered as White Flint knowingly engaged in such discussions fully aware of the fact that it

cannot construct (and lease) space to third parties in any new redevelopment unless and until it has the consent of Lord & Taylor to move forward with any development plan.

As the Court noted in <u>Eisenstadt,</u> White Flint is "in no position to complain that the restrictions were not within reasonable bounds" where they knew and accepted the restrictions and indeed, negotiated them in the first place.  <u>Eisenstadt v. Barron</u>, 252 Md. 358, 371, 250 A.2d 85, 92 (Md. 1969).  In <u>Eisenstadt</u>, the Court issued an injunction requiring the removal of pipes erected in deliberate violation of the restrictive covenants and noted:

> **'The defendant has been quite set in his determination to violate the restrictions both before and after he accepted the deed. He obviously never intended to abide by the restrictions. In this regard he was practicing a deceit against the grantors. A Court of equity will not lend its aid to this deceit.'**

<u>Id</u>. at 87.

Like the breaching party in <u>Eisenstadt</u>, White Flint knew of the restrictive covenants and their limitations.  Despite this, White Flint drove ahead with its plans to redevelop the Site irrespective of the consequences.  It cannot now come to the Court and ask for it to consider its purported hardship now if the Court simply enforces the very bargain that White Flint was aware of but knowingly violated.  Because of this, the Court should not have considered the purported hardship to the Defendant if it is enjoined from constructing its mixed use development. <u>Eisenstadt v. Barron</u>, 252 Md. 358, 371, 250 A.2d 85, 92 (Md. 1969); <u>Grubb v. Guilford,</u> 228 Md. 135, 178 A. 2d. 886 (1962); <u>Coleandrea v. Wilde, Lake Community</u> <u>Ass'n</u>, 351 Md. 371,398-399, 761 A. 2d 899,913 (2000).

## II.     An Injunction Is a Feasible Remedy to Stop White Flint from Constructing Its Sketch Plan.

White Flint attempted to deter the Court from issuing an injunction by arguing that it would be simply "too difficult" for the Court to issue an injunction to stop White Flint's intentional

violations because such an act would require the Court to be involved on a daily basis in the mall's operations.  Such allegations are nothing more than misleading fabrications which not only twist the facts, but also misconstrue the law.

Lord & Taylor's Complaint unambiguously asked the Court to issue a permanent injunction and maintain the status quo by enjoining Defendant from (i) altering the Shopping Center Site as currently constructed as required by Section 6.1(b) of the parties Agreement and (ii) to enjoin White Flint from constructing the mixed use development depicted in Defendant's Sketch Plan until the term of the parties' Agreement has expired.  See Complaint, 43, 44, Prayer for Relief (c).  There is nothing novel in the relief sought by Lord & Taylor.  Maintaining the status quo and issuing a permanent injunction to stop a party from violating restrictive covenants is commonplace and requires no judicial oversight.  See Redner's, 2013 WL 2903285 at *7 ("affirmatively requiring removal of tenants in violation of restrictive covenants); City of Bowie, (holding restrictive covenants prohibited use of office space as a dance studio and enjoining the use of space for that purpose); Chestnut Real Estate, 811 A. 2d at 403 (requiring the removal of offending shed improvements that violated restrictive covenants); and Eisenstadt v. Barron, 252 Md. 358, 361, 250 A.2d 85, 87 (Md. 1969) (requiring the removal of a waterline constructed in willful violation of covenants).  Here, all the Court must do is state that the Shopping Center Site cannot be altered in violation of Sections 6.1 and 8.1 (which White Flint already agreed not to do when it signed the REA), and enjoin White Flint from constructing its mixed use development depicted in its proposed Sketch Plan until the terms of the parties Agreement expires.  This type of injunction will maintain the status quo and effectuate the restrictive covenants as this Court must do as declared in City of Bowie.  398 Md. at 692 (finding that it is the Court's duty to effectuate restrictive covenants – especially those of a fixed duration, rather than find ways to

avoid them).  Consequently, the remedy sought by Lord & Taylor is both feasible and warranted under well settled case law.

Finally, unlike what was alleged, Lord & Taylor did not ask the Court to oversee and remedy all of White Flint's willful violations of the covenants.  Lord & Taylor's Complaint is devoid of any allegations asking the Court to require White Flint to rebuild the Bloomingdales Site or to re-lease space in the mall to the mall's prior tenants.  Nevertheless, White Flint misled the Court into believing such relief was being sought so the Court would be deterred from requiring White Flint to carry out its bargain.  To that end, the Court noted in granting Defendant's Motion that it did not want to oversee the "rebuilding" or "bringing tenants back into the Mall".  Yet neither of these things was requested by Lord & Taylor as part of the injunctive relief sought!  The injunction sought in this case is negative in character.  All that is sought is for the Court to enjoin White Flint from destroying the Enclosed Mall, the Common Areas and Lord & Taylor's parking garages and to prohibit White Flint from constructing its mixed use development while the parties Agreement is in effect.  No day-to-day judicial oversight was sought or is required. Consequently, summary judgment should not have been denied on this basis.[2]

---

[2] Although Defendant relies heavily on the holding of <u>M. Leo Storch Ltd. Partnership v. Erol's, Inc.</u>, 95 Md.App. 253, 265, 620 A.2d 408, 414 (1993), the holding there has no bearing on this case.  In <u>M. Leo Storch</u>, the owner of a shopping center sought a preliminary injunction requiring the defendant to keep its store open despite declining sales. 95 Md. App. at 256; 620 A. 2d at 410.  In support thereof, the owner relied upon a "continuous operation clause" in the lease agreement which states that "Tenant shall operate all of the leased premises during the entire term of this Lease with due diligence and efficiency so as to produce all of the gross sales which may be produced by such manner of operation, unless prevented from doing so by causes beyond Tenant's control."  95 Md. App. at 256; 620 A. 2d at 410.

Unlike the situation addressed by the Court in <u>M. Leo Storch</u>, Lord & Taylor is not asking the Court to "force" White Flint to run a first class mall at the Site on a day-to-day basis. All it has asked for is to leave the Mall, common area structures intact and to preclude Defendant from violating the restrictive covenants.  The variety of injunction sought by Lord & Taylor, one that prohibits the doing of an act, is properly characterized as a "negative" or "prohibitory injunction" 95 Md. App. at 261; 620 A. 2d at 413.  The situation in <u>M. Leo Storch</u> dealt with a

### III.     Lord & Taylor Will Be Irreparably Harmed If the Litigation is Not Stayed.

There is no question that if White Flint is permitted to demolish the current Shopping Center Site, Lord & Taylor will be irreparably harmed.  See, e.g., Murray Decl., Pall Decl., Narva Decl., Schneider Decl.  If the Sketch plan is constructed as proposed, several significant and bargained for aspects of the site will change forever.  The current layout of the Mall gives substantial visibility to Lord & Taylor and its iconic black and white logo from Rockville Pike.  No ancillary buildings take away Lord & Taylor's prominence.  Murray Decl. at 2.  The store is visible from most points of entry to the Mall.  Id. at 3.  Currently, Lord & Taylor enjoys significant surface and structural parking and a pedestrian walkway which funnels traffic into the store.  Id. Landscaping around the Mall maintains marketable sight lines to the building, its façade and trademark logo.  Id.  Signs along Rockville Pike provide motorist with crucial visible cues as to the Mall's entrance and presence as a key anchor tenant.  Id. The layout of the roadways and the visibility of the store significantly enhance Lord & Taylor's ability to attract and retain customers.  Lord & Taylor is currently positioned as a key retail anchor consistent with its brand message and desired customer experience.

The Sketch Plan, however, proposes to raze the entire site.  Id. at 5.  The Shopping Center will be destroyed.  The Sketch Plan would demolish the multi-story enclosed Mall to which Lord & Taylor is connected.  Id. at 6. It would also destroy the elevated parking areas, street network and pedestrian walkways.  Interior customer access to second floor of Lord & Taylor would be eliminated.  Murray Decl. at 7.  Access to Lord & Taylor's loading dock will also be impaired.  Id.  The Sketch Plan also proposes to convert approximately eighty percent (80%) of

---

"mandatory" injunction.  Id. White Flint's reliance on M. Leo Storch is, thus, both misplaced and misleading.

the site to non-retail use.  Pall Decl. at 2.  All of this proposed development is in clear violation of the restrictive covenants that Lord & Taylor bargained for and to which White Flint agreed.

If a mixed use development is permitted, the layout, appearance, composition and feel of the property will be dramatically altered.  Instead of the prominence it currently enjoys, Lord & Taylor will be hidden in a canyon of surrounding buildings and flanked by non-retail uses.  Pall Decl. at 6.  The primary entrance would redirect traffic, which now efficiently flows around Lord & Taylor, well past the store and through a confusing series of loops.  Murray Decl. at 8.  Vehicle and pedestrian flow into the store will be redirected and impeded.  Parking would become more complex and time consuming.  Narva Decl. at 3.  The Sketch Plan eliminates significant pathways of customer ingress and egress and fails to provide clear customer access.

In other words, all of the favorable site characteristics that Lord & Taylor bargained for and currently enjoys will be lost if White Flint is permitted to proceed.  Without a stay of this litigation while the Fourth Circuit considers this Court's grant of partial summary judgment and the dismissal of Lord & Taylor's right to obtain permanent injunctive relief, Lord & Taylor will be irreparably harmed.

**IV.     White Flint Will Not Be Harmed If the Litigation Is Briefly Stayed to Allow the 4th Circuit to Consider the Interlocutory Appeal.**

Conversely, White Flint will not be harmed if this Court grants a temporary stay to permit the Plaintiff to seek interlocutory review of this Court's order granting summary judgment.  Critically, it must be said at the outset to this Court that <u>White Flint does not have the approval it needs to build anything other than what currently exists at the Mall</u>.  This includes the Enclosed Mall, the parking lots serving Lord & Taylor's customers and the common areas.  All of these improvements currently exist and White Flint does not have the County approval to rip them

27

down and construct its mixed use development anytime in the near future.  Thus, a stay of this case pending resolution of the interlocutory appeal will not be fatal to the Defendant.

Second, White Flint is years away from being able to build its proposed mixed use development on the Site.  Before White Flint can construct anything, White Flint is obligated to file both a preliminary site plan and a final site plan for its proposed mixed use development.  White Flint has <u>not yet filed either plan</u>, and once it does so, each plan (in tandem) will go through a considerably lengthy review process both with Montgomery County and the community before approval to build anything will be given.

Third, Defendant has not yet taken the steps necessary to proceed with its Sketch Plan that is at issue in this litigation.  Specifically, it must still: (i) have a pre-filing community meeting; (ii) file a preliminary plan of subdivision; (iii) receive M-NCPPC staff approval of a certified site plan; (iv) record a new plat of subdivision; (v) file an application for Staging Allocation Request; and finally, once a final site plan is approved, (vi) request and apply for a building permit.  These factors are in addition to those requirements that are set forth in the County's own Order of additional factors that White Flint must perform in order to proceed with any proposed redevelopment.

Consequently, unlike the mantra that this Court has been hearing from Defendant, White Flint is not even close to being able to construct anything other than what currently exists on the Site for several years.  The County confirmed this very fact- that construction is at least two years away – when asked immediately following this Court's ruling.  <u>See Exhibit A</u>, attached.

Therefore, the only person who will be harmed if the Court does not issue a stay this litigation pending its ruling is Lord & Taylor.  If the Court does not stay the litigation, the Court

will be effectively be allowing the taking of Lord & Taylor's property rights without permitting the Fourth Circuit determine if equity precludes such a taking.

**V.      Public Interest Is Served Because Maryland Has a Strong Public Policy Which Favors Enforcement of Restrictive Covenants Through Injunctive Relief.**

The public is served by having this matter stayed so that the Fourth Circuit can resolve the split in the decision in this case and Redner's and whether damages is now an appropriate remedy for willful and continual violations of restrictive covenants.  The State of Maryland has a strong history of holding parties to their bargains.  Redner's, 2013 WL 2903285 at *5 (holding injunctive relief appropriate as "Maryland law strongly favors upholding the intent of contracting parties through enforcement of contractual terms.")  See also Dumbarton, 434 Md. at 52, 73 A. 3d at 233.  Nevertheless, the Court's ruling granting Defendant's Partial Motion for Summary Judgment, makes the public's right to enforce restrictive covenants through equitable relief much less certain and runs counter to the assurances provided to such holders by existing Maryland law.  See Dumbarton, 434 Md. at 52, 73 A. 3d at 233; King v. Waigant, 208 Md. 308, 117 A.2d 918; Grubb 228 Md. at 140, 178 A. 2d at 888.  Under the Court's decision, restrictive covenants just became substantially less secure and valuable in Maryland as they now amount only to a contractual right to damages, rather than a property right to be enforced by equitable relief.  If that is indeed to be the law, then public policy is served by (i) having it so declared by the Fourth Circuit and (ii) having the difference between the decision in this case and the decision in Redner's resolved so that holders of restrictive covenants know what the law is.

## CONCLUSION

The Court should stay its December 20, 2013 Order granting White Flint's Partial Summary Judgment Motion.  Lord & Taylor seeks an expedited appeal of that ruling.  A stay

would be appropriate here.  As shown above, Lord & Taylor is likely to prevail on appeal for the following reasons.

1. It was inappropriate for the Court to use as a partial basis for its decision, the fact that implementation of White Flint's Sketch Plan was desired by the County and would purportedly benefit the County.  The County was not a party to the Agreement and the restrictive covenants that ran with the real property.

2.  At this stage of the case, where no discovery has occurred and no depositions have taken place, Lord & Taylor has shown numerous disputed issues of material fact, including, but not limited to; (a) the extent to which the County would benefit, and whether there were other alternatives to White Flint's Sketch Plan; (b) the extent of and relevance of alleged "changed circumstances" around the Mall such as to justify the Court's use of those contested facts to grant partial summary judgment and conclusively decide at this early stage that the restrictive covenants will not be enforced no matter what the evidence later shows.

3. Money damages are not adequate for the willful violation and taking of the restrictive covenants.

4. The Court should not have considered and relied upon White Flint's assertion that to ultimately grant Lord & Taylor's injunction would have required the Court to don a "hard hat" and supervise the day to day management of White Flint's obligations.  Lord & Taylor merely seeks the maintaining of the status quo – enforce the restrictive covenants already in place.  The Mall still exists.  It has not been torn down.  Such activity may be a year or more down the road.  White Flint will not be sufficiently harmed by the delay, IF ANY, in maintaining the status quo.

5. There is no undue hardship to White Flint should the Court enforce the restrictive covenants.  Any hardship that does exist is of White Flint's own making.  White Flint cannot intentionally breach the restrictive covenants and then complain it would be burdened by such enforcement.

6. Enforcing the Parties' bargained for rights is substantially in the public's interests and is consistent with the law of this State.

Respectfully submitted,

Dated:  December 31, 2013

_____/s/_____

David G. Barger
MD Bar No. 14716
Michelle D. Gambino, *pro hac vice*
Kevin B. Bedell
MD Bar No. 15513
Greenberg Traurig, LLP
1750 Tysons Blvd., Suite 1200
McLean, VA  22102
Tel:  (703) 749-1380
Fax: (703) 749-1381
bargerd@gtlaw.com
gambinom@gtlaw.com
bedellk@gtlaw.com

*Counsel for Lord & Taylor, LLC*
*  and LT Propco LLC*