IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **LORD & TAYLOR, et al.,** | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Civil Action No. RWT-13-1912 |
| | * | |
| **WHITE FLINT, L.P. n/k/a** | * | |
| **WHITE FLINT MALL, LLLP,** | * | |
| | * | |
| Defendant. | * | |

******

## REPORT AND RECOMMENDATION

This Report and Recommendation addresses Plaintiffs' Motion Requesting the Award of Attorney's Fees ("Plaintiffs' Motion")(ECF No. 450), as well as the opposition and reply thereto. Pursuant to 28 U.S.C. § 636, and Local Rule 301, the Honorable Roger W. Titus referred this matter to me for the making of a Report and Recommendation concerning the award of attorney's fees. For the reasons stated herein, I recommend the Court DENY the Motion as enumerated herein.

### I. Factual and Procedural Background

The present dispute arises from the redevelopment of the White Flint Mall located in Bethesda, Maryland. Plaintiffs were tenants, whereas Defendant was the lessor of the property. The relationship between the parties is governed by a Reciprocal Easement Agreement ("REA")(ECF No. 450-1) which Plaintiffs allege was violated. After a multi-week jury trial, Plaintiffs obtained a jury verdict of $31 million. Specifically, the jurors determined that Defendant violated Plaintiffs' "rights under the REA in one or more ways described in the

Court's instructions." Plaintiffs now seek $2,725,363.00 in attorney's fees for nearly nine thousand hours of legal work flowing from the litigation. It is the purpose of this report to recommend to the Court the appropriateness of the award of legal fees to Plaintiffs.

II.    Discussion

    A.    Maryland Follows the "American Rule" in Awarding Attorney's Fees

This case was filed pursuant to the diversity jurisdiction of the court. As such, Maryland law is applicable. Under Maryland law, "the prevailing party in a lawsuit may not recover attorney's fees as an element of damages or costs unless (1) the parties to a contract had an agreement to that effect, (2) there is a statute that allows the imposition of such fees, (3) the wrongful conduct of a defendant forces a plaintiff into litigation with a third party, or (4) a plaintiff is forced to defend against a malicious prosecution." Thomas v. Gladstone, 386 Md. 693, 699, 874 A.2d 434, 437 (2005). Plaintiffs seek attorney's fees here on the basis of contracts, specifically the REA and its relevant counterpart in Paragraph 31 of the Sub-Lease Agreement (the "Sub-Lease")(ECF No. 450-8).

    B.    The Indemnification Clauses of Sections 1.13 and 5.4 of the REA

The REA contains at least two indemnification provisions under which Plaintiffs contend they are entitled to attorney's fees. Section 1.13 states

> "Each party shall at all times: (A) take any and all safety measures reasonably required to protect the other parties hereto and their employees, agents, contractors, and invitees from injury or damage caused by or resulting from the performance of its *construction*, (B) indemnify and hold harmless the other parties hereto from or in respect to the death of or any accidents, injury, loss or damage . . . whatsoever caused by any person or to property as shall occur in the process of, during the course of or by virtue of its *construction* and (C) indemnify and hold the others harmless from and against mechanic's, materialman's and laborers' liens, and all costs, expenses and liabilities in connection with or arising from its said *construction.*

Section 1.13 (emphasis added). Under this Section, the parties intended to mutually indemnify each other during the *construction* phase of the mall. By its terms, it is not applicable to a more general award of fees. Section 5.4 of the REA is similarly concerned about insurance. It states

> Except for claims paid pursuant to joint general public liability insurance referred to in Section 5.5, [Defendant] will indemnify and save [Plaintiffs] harmless from and against any and all claims, actions, damages, liability and expense in connection with the loss of life, personal injury or damage to property, or any of them, in, on or about the Shopping Center Site or the Access Easement occasioned wholly or in part by any act or omission of [Defendant], its tenants, agents, contractors or employees, including but not limited to any and all claims, actions, damages, liability and expense arising out of [Defendant's] maintenance of the Common Areas, common facilities and improvements and common utility facilities on the Shopping Center Site and Access Easement as in Section 4.1 provided[.]

Section 5.4 of the REA. The plain reading of the REA suggests that Section 5.4 is limited to issues of insurance. There is no indication that attorney's fees are to be paid due to any other breach of the REA.

In light of the broad language of indemnification used in both sections, Plaintiffs argue that case law supports the reimbursement of attorney's fees to the prevailing party in a lawsuit such as the present one. Plaintiffs contend that their position is supported by Atlantic Contracting & Material Co., Inc. v. Ulico Cas. Co., 380 Md. 285, 844 A.2d 460 (2004). Atlantic Contracting deals with a surety and indemnification agreement in a first party lawsuit which did not use the term "attorney's fees." The Maryland Court of Appeals allowed Ulico to pursue its claim for attorney's fees based upon the strong language of the indemnity agreement itself. The indemnity agreement defines "Loss" to mean:

> Any and all damages, costs, charges, and expenses of any kind, sustained or incurred by [Ulico] in connection with or as a result of: (1) the furnishing of any Bonds; and (2) the enforcement of this

> Agreement. Loss shall also include any funds disbursed by [Ulico], or arranged for or guaranteed by [Ulico] for the use and/or benefit of any indemnitor.

Id. at 469. The Court determined that Atlantic Contracting was required "to pay Ulico the sums it incurred to enforce the agreement, which included its attorney's fees." Id. at 478. Conversely here, the language in the indemnification clauses of the REA are not sufficiently similar to support Plaintiffs' arguments. In neither Section 1.13 nor 5.4 did the parties include the right to the recovery of attorney's fees for the initiation of lawsuits seeking to enforce the provisions of the REA. The principle set forth in Atlantic Contracting was reaffirmed four years later in the case of Nova Research Inc. v. Penske Truck Leasing Co., L.P., 405 Md. 435, 952 A.2d 275 (2008). The Court in Nova Research adopted the approach followed in the majority of states and requires that

> [T]he contract provide expressly for recovery in first party enforcement actions. The contract in the case before us does not explicitly cover expenses in the enforcement of the contract; therefore, we shall not imply the recovery of attorney's fees accrued in a first party action establishing the right to indemnity.

Id. at 289. In looking to the Nova Research decision, our federal court in Maryland has stated that

> [I]ndemnification provisions normally only extend to losses incurred in defending against actions by third parties not first party litigation between the contracting parties. 'Where the contract provides no express provision for recovering attorney's fees in a first party action establishing the right to indemnity, . . . we decline to extend this exception to the American Rule which generally does not allow for the prevailing party to recover attorney's fees.'

Hearn Insulation and Improvement Co., Inc. v. Bonilla, Civ. A. No. 09-cv-00990-AW, 211 WL 220091 at *1 (D. Md. Jan. 21, 2011) (quoting Nova Research, 952 A.2d at 285). In summary, the indemnification provisions here provide "no express provision" to recover fees in this first party action.

4

## C. Compliance with Laws Issued by Governmental Authorities under Section 6.4 of the REA

Under the REA, Defendant agrees to indemnify Plaintiffs from all claims, damages, costs and expenses, "including reasonable counsel fees," by reason of its failure to comply with Section 6.4. In pertinent part, it states Defendant agrees

> . . . [T]o comply or cause compliance with any and all laws, orders, notices, regulations, rules and requirements in respect to any buildings or improvements, including the Enclosed Mall in the Partnership Tract and in respect to the Common Areas, common facilities and improvements and common utility facilities wherever situated, issued by any municipal, county, state, federal or other governmental authority . . . .

Section 6.4 of the REA. In essence, Defendant agreed to comply with all laws and requirements "issued by any . . . governmental authority" as it relates to the buildings and improvements of which Plaintiffs were expecting to receive the beneficial use. If Defendant failed to comply, Plaintiffs would be indemnified from all claims, damages, costs, expenses and reasonable counsel fees. Plaintiffs now attempt to expand upon the agreed to language and suggest that the parties agreed that Defendant would indemnify Plaintiffs if Defendant failed to comply with the "any laws" or legal principles that ever existed.

The jury determined that Defendant violated Plaintiffs' rights under the REA. The jury did not determine that a law, order, notice, regulation, rule or requirement was "issued" and disobeyed. It is the view of the Court that provisions such as this are aimed at activities such as the passage of building codes that require changes to the property. If the landowner fails to timely comply, the tenant would then have a cause of action and would be entitled to the award of attorney's fees. Section 6.4 is not written or intended to be applicable to virtually any violation of the law whether it be a public or a private nature. There is no indication that Defendant failed to comply with any laws "issued" by a governmental authority.

5

Plaintiffs also conflate the violation of their private rights and transgressions of common law principles to make the argument that any violation of the contract or of a common law principle is tantamount to a noncompliance with the "all laws" provision of the REA triggering the application of the award of counsel fees under Section 6.4.  For example, Plaintiffs state "White Flint agreed only to construct the Site with Exhibit B to the REA and was not permitted to alter it in order to build the Sketch Plan without the consent of Lord & Taylor."  Pls.' Mot. at 9-10.  Distilled to its essence, Plaintiffs' argument is that if Defendant proceeded with construction without Plaintiffs' consent, said activity would make Defendant's conduct unlawful.  While this would be a clear breach of contract, it is equally clear that such a scenario has nothing to do with the "issuance" of "laws, orders, notices, regulations, rules or requirements" by a governmental authority.  The same construct is reflected in Plaintiffs' argument regarding Defendant's covenant to "operate a first class Mall in the Mall building during the term of Lord & Taylor's lease." Plaintiffs' attempt to blend the tenants of common law with the contractual remedies of Section 6.4 in an effort to recover legal fees.  Such an attempt should not be endorsed.

At its core, Plaintiffs' view is that if Defendant violates the law, "any law," said violation would entitle Plaintiffs to the award of attorney's fees.  From Plaintiffs' vantage point "any law" includes not only building regulations that may become effective over the years, but also all aspects of the common law, tort law, property law, and the law of contracts.  In the event that a simple breach of contract is found to exist for any reason, said breach would be a failure to comply with this "any law" provision.  Such a conclusion contorts the express language of the REA.  In the event these sophisticated business entities were intending such a result, they could

have simply stated that should there be litigation between the parties for any reason, the prevailing party would be entitled to an award of attorney's fees. Such did not occur here.

      **D.    Default and Performance Section 10.1 of the REA and Paragraph 31 of the Sub-Lease Agreement**

In the event of default by Defendant, under either the REA or the Sub-lease, Plaintiffs may elect to perform those duties that are the responsibility of Defendant and recover attorney's fees. In pertinent part, the REA states,

> If any party shall not keep and perform any of the terms, covenants, conditions or agreements . . . , or in the case of a default which cannot with due diligence be cured within a period of thirty (30) days . . . (the non-defaulting party) shall have the right to elect to perform such term, convenant, condition, or agreement . . . . In the event a party shall elect to perform any defaulting party's obligations hereunder as authorized in the preceding sentence, and the latter fails to make reimbursement to the electing party promptly on demand for the cost (including reasonable expenses incurred in so doing, which expenses shall include counsel fees) of so doing, the electing party may reimburse itself therefor with interest . . . .

Section 10.1 of the REA. The language of the Sub-Lease Agreement is quite similar.

> If either Landlord or Tenant shall default in the performance of any of its covenants, obligations or agreements contained in this Sub-Lease . . . , then the non-defaulting party . . . may . . . perform the same for the account . . . at the expense of the defaulting party, and the amount of any payment made or other reasonable expenses, including attorneys' fees incurred by the non-defaulting party for during such default . . . shall be payable by the defaulting party to the non-defaulting party on demand.

Paragraph 31 of the Sub-Lease Agreement. Plaintiffs' argument suggests that the "performance" requirement was satisfied by their pursuit of the present litigation resulting in a favorable verdict. I am of the view that this argument strains the plain reading of the contract. The language of entitlement to fees is not tied to a mere breach of contract, but to the actual performance of "the defaulting party's obligations." Plaintiffs have made no suggestion that they <u>actually performed</u>

7

"any of the terms, covenants, conditions or agreements" in the REA. The jury verdict was silent as to this factual issue.

Clearly, certain "terms, covenants, conditions or agreements" (such as snow removal obligations) are capable of being "performed" by Plaintiffs in the event of a failure of Defendant to do so. Others are not capable of being "performed." Such a distinction does not result in the right to attorney's fees for any breach or default under the contract in the absence of an express provision. Here the parties expressly linked such a right to "performance" of the defaulting party's obligations. It is not for the Court to re-write the contract. Preserving or protecting a "term," "covenant," "condition," or "agreement" by way of litigation is far different from performance and/or carrying out the duties of another. Again, the parties could have agreed that attorney's fees would be available to the prevailing party should litigation be required in order to enforce any of the "terms, covenants, conditions or agreements." This did not occur. Plaintiffs' argument that the only way to protect its rights was by way of litigation was rejected in Hearn Insulation. See Hearn Insulation at *1. Plaintiffs there were armed with a far more robust contractual provision. Additionally, Berkley Trace, LLC v. Food Lion, Civ. A. No. RDB-11-03207, 2013 WL 5718867 (D. Md. Oct. 18, 2013), stands for the proposition that attorney's fees are appropriate for the breach of a lease agreement when expressly authorized.

Unavailing is Plaintiffs' reliance on Glesner v. Baer, No. 0857, Sept. Term, 2014, 2015 WL 7162010 (Md. Ct. Spec. App. Nov. 13, 2015). Glesner involved the breach of the covenant of special warranty of an easement. The grantor of the deed refused to defend the title against a challenge resulting in the grantee incurring legal expenses to do so. By definition, under Md. Code Ann. Real Prop. §2-106 (West 2010) the grantor is required to provide the legal defense to any challenged use of the easement. Such is not the case between the present parties. Section

10.1 is not a special warrant provision. There is no adverse claim from a third party. In fact none of Plaintiffs' arguments suggesting that the Court can infer the ability to collect attorney's fees due to a violation of a restrictive covenant or easement, without more, is supported by case law.[1] Simply put, Plaintiffs' argument is lacking support.

### E. Plaintiffs' Alternative Reliance on Fed. R. Civ. P. 37 for Defendant's Responses to Requests for Admission

During the discovery phase of this case, Plaintiffs propounded requests for admission pursuant to Fed. R. Civ. P. 36. Certain requests for admissions were clear, unambiguous and deserving of a better response. For example, Request No. 23 is lifted verbatim from the REA, and Defendant's objection is without basis. Similarly, Defendant's response to Request No. 28 is disingenuous in its attempt to avoid admitting the obvious. Other requests for admission are problematic. For example, Request No. 22 states "admit or deny that you conveyed easements to Lord & Taylor over certain portions of the Partnership Tract." Here, Plaintiffs seek fees for Defendant's failure to admit the existence of easements. Plaintiffs additionally argue that as a result of Defendant's failure to admit, they were then required to prove that Defendant's "redevelopment efforts had already damaged and would continue to damage those easements." This "proof point" is not accurate. Even if admitted, Plaintiffs would have been required to demonstrate the claimed damage. Moreover, Request No. 22 speaks in very general terms. There is no specificity as to which easement is at issue, how many easements are at issue, or to what locations on the property the easements may be at issue. The easements are not otherwise identified by reference to the REA, or maps, or other descriptions of the property. Even if

---

[1] Plaintiffs misapply Redner's Markets v. Joppatown GP, L.P., Civ. A. No. RDB-11-1864, 2015 WL 1242342 (D. Md. Mar. 17, 2015). The fees awarded in Redner's Markets were in response to the Court's sanction for a violation of the Court's permanent injunction. No such situation is involved here.

9

Defendant admitted to this request, Plaintiff's burden would have been the same at trial, that is, the burden of demonstrating with specificity the easement allegedly violated. Additionally, Defendant argues about the use of the term "easement." This was a disputed description of the language of the REA. At the end of the day, the jury verdict was silent even as to the existence of an easement, let alone the existence of more than one.

Assuming *arguendo* that Defendant wrongfully responded to selected requests for admission, Plaintiffs' have failed to specify the actual fees incurred for said misconduct. Plaintiffs have not pointed to an occasion where a particular witness had to be interviewed or prepared to testify. Plaintiffs have not identified any unnecessary research conducted, nor motion filed with the Court that is directly traceable to Defendant's refusal to make an admission. For this reason alone, I recommend no award of attorney's fees for Defendant's alleged failures to admit.

## IV.    Conclusion

It is my recommendation that no attorney's fees be awarded under the REA or the Sub-Lease Agreement. In the event that the Court determines otherwise, the affidavit of Plaintiffs' fee expert John D. Wilburn is exhaustive, informative and speaks directly to the reasonableness of the rates charged, the time spent by each timekeeper, and the necessity of the work performed. (ECF 453-2). Furthermore, there is no challenge to the rates applied, to the time spent by each time keeper, to the work performed or to whether such work was necessary. Here, Defendant only challenges "the results obtained." Accordingly all other aspects of the time keeper entries are conceded by silence. See Astornet Technologies v. BAE Systems, Inc., 201 F. Supp. 3d 721, 730 (D. Md. 2016).

This case is a classic instance in which the application of Appendix B of our Local Rules provides only marginal guidance. Without doubt this matter was of significant complexity and required the full time and attention of counsel experienced in the area of commercial real estate litigation. I also agree with Plaintiffs' assessment that the victory here was substantial and significant. Nonetheless, my recommendation is against the award of attorney's fees.


December 15, 2017 /s/
Charles B. Day
United States Magistrate Judge